UNITED STATES of America, Plaintiff–Appellee,

v.

Ronald S. BROWN, Defendant–Appellant.

No. 91–5447.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 4, 1992.

Decided March 19, 1992.

William Cohen, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Nashville, Tenn., for plaintiff-appellee.

William J. Marett, Jr. (argued and briefed), Bryan & Marett, Nashville, Tenn., for defendant-appellant.

Before: KENNEDY and JONES, Circuit Judges; and BROWN, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Defendant, Ronald S. Brown, appeals his jury conviction and sentence imposed for carrying a firearm during the commission of a crime of violence for which he could be prosecuted in federal court, and for possession of a weapon by a convicted felon. For the reasons that follow, we affirm.

## I

The events underlying Brown's conviction transpired in a small tavern known as Lisa's Just In Time located in Nashville, Tennessee. Like many drinking establishments, Lisa's Just In Time serves beer and snack food manufactured in another state. At approximately 3:00 a.m. on New Year's Day, 1989, Brown entered the back door of Lisa's Just In Time wearing a nylon mask and armed with a shotgun. Brown placed the muzzle of the gun into the back of an employee and ordered her not to move. He then proceeded to the cash register near the bar's front entrance. As he ap-

proached the register, however, he was disarmed by bartender Tommy Springer and his father-in-law. Springer removed the nylon mask, whereupon, to everyone's surprise, Brown stated that he recognized Springer as a former acquaintance and added, somewhat belatedly, that he would not have attempted to rob the tavern had he known Springer worked there. Brown, the ski mask, and the shotgun were then turned over to the police. Approximately three hours later, after being advised of his *Miranda* rights, Brown confessed to officers that he had gone to Lisa's Just In Time with the intent of robbing it, and that he had hoped to steal between $7,000 and $8,000.

On September 29, 1989, Brown pleaded guilty in state court to assault with intent to commit armed robbery and received a sentence of five-years imprisonment. On December 14, 1989, a federal grand jury returned a two-count indictment charging Brown, in count one, with carrying a firearm during the commission of a crime of violence for which he could be prosecuted in federal court (namely, a violation of the Hobbs Act, 18 U.S.C. § 1951 (1988)), in violation of 18 U.S.C. § 924(c)(1) (1988), *amended by* 18 U.S.C.A. § 924(c)(1) (West Supp.1991), and, in count two, with possession of a weapon by a convicted felon in violation of 18 U.S.C.A. §§ 922(g)(1), 924(a)(1)(D) (West Supp.1991). After filing a series of motions to continue the date of trial, Brown filed a motion to dismiss the indictment for prejudicial preindictment delay. That motion was denied.

The case proceeded to trial on January 22, 1991. At the conclusion of trial, the jury found Brown guilty on both counts. On March 27, 1991, Brown was sentenced to five-years imprisonment on count one and fifty-one-months imprisonment on count two, the latter to be served concurrently with the state sentence that Brown was serving. This timely appeal followed.

## II

Brown's first claim on appeal is that the prosecution's delay in bringing the instant federal charges violated his right to due process embedded in the Fifth Amendment. The district court rejected this claim in denying Brown's pretrial motion to dismiss the indictment.

Our analysis of this issue is guided by *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) and its progeny. In *Lovasco*, Justice Marshall, writing for the Court, recognized that, while statutes of limitations provide the primary guarantee against the prosecution of overly stale criminal charges, *id.* at 789, 97 S.Ct. at 2048; *accord United States v. Atisha*, 804 F.2d 920, 928 (6th Cir.1986), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987), the Due Process Clause of the Fifth Amendment also plays a "limited role" in protecting against excessive preindictment delay, *Lovasco*, 431 U.S. at 789, 97 S.Ct. at 2048. The Court emphasized, however, that " 'fundamental conceptions of justice' " embodied in the concept of due process are not impinged simply upon a showing that the government failed to secure an indictment immediately upon a determination of probable guilt. *Id.* at 791, 97 S.Ct. at 2049 (quoting *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 341–42, 79 L.Ed. 791 (1935)).

> From the perspective of potential defendants, requiring prosecutions to commence when probable cause is established is undesirable because it would increase the likelihood of unwarranted charges being filed, and would add to the time during which defendants stand accused but untried.... From the perspective of law enforcement officials, a requirement of immediate prosecution upon probable cause is equally unacceptable because it could make obtaining proof of guilt beyond a reasonable doubt impossible by causing potentially fruitful sources of information to evaporate before they are fully exploited. And from the standpoint of the courts, such a requirement is unwise because it would cause scarce resources to be consumed on cases that prove to be insubstantial, or that involve only some of the responsible parties or some of the criminal acts. Thus, no one's interests would be well

served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so. *Id.* 431 U.S. at 791–92, 97 S.Ct. at 2049–50 (footnotes omitted).

■ Indeed, a defendant's right against preindictment delay is circumscribed in substantial part by a defendant's equally vital interests in freedom from indictment prior to a showing of probable cause consistent with the Fourth Amendment, and freedom from *post*-indictment delay guaranteed by the Speedy Trial Clause of the Sixth Amendment. Thus, particularly where the delay is investigative rather than intended to gain a tactical advantage over the accused, preindictment delay does not offend the Fifth Amendment. *Id.* at 795, 97 S.Ct. at 2051. "Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt." *Id.; see also United States v. Eight Thousand Eight Hundred and Fifty Dollars*, 461 U.S. 555, 563, 103 S.Ct. 2005, 2011–12, 76 L.Ed.2d 143 (1983) (noting that "the interests of the suspect and society are better served if, absent bad faith or extreme prejudice to the defendant, the prosecutor is allowed sufficient time to weigh and sift evidence to ensure that an indictment is well founded").

■ This court has consistently read *Lovasco* to hold that "[d]ismissal for pre-indictment delay is warranted only when the defendant shows [1] substantial prejudice to his right to a fair trial *and* [2] that the delay was an intentional device by the government to gain a tactical advantage." *United States v. Brown*, 667 F.2d 566, 568 (6th Cir.1982) (per curiam) (emphasis added); *accord United States v. Lawson*, 780 F.2d 535, 541 (6th Cir.1985) (per curiam). "A showing of prejudice to the defendant, without more, is not enough to prove a due process violation; rather, there must also be a consideration of the reasons for the delay." *Atisha*, 804 F.2d at 928; *accord United States v. DeClue*, 899 F.2d 1465,

1468–69 (6th Cir.1990). Thus, although preindictment delay intentionally brought about by the prosecution to obtain a tactical advantage over the defendant may warrant the dismissal of an indictment, *see, e.g., Atisha*, 804 F.2d at 928; *Lawson*, 780 F.2d at 541, a defendant's Fifth Amendment due process rights are generally not implicated where the government offers a valid reason for the delay, *DeClue*, 899 F.2d at 1469.

■ In the instant case, Brown rests his due process challenge exclusively upon the fact that the federal indictment followed his guilty plea in state court to assault with intent to commit armed robbery. Specifically, Brown contends that his state plea prejudiced his ability to mount a defense to the federal charges, and that the motive for the delay was solely for the improper purpose of obtaining this tactical advantage. Upon review, we disagree.

First, it is doubtful whether Brown's plea on the state charges prejudiced in any meaningful respect his conviction on the federal indictment. The evidence against Brown on the underlying crime of attempted robbery was overwhelming: he was apprehended at the scene of the crime, was recognized by the bartender who disarmed him, was arrested immediately thereafter, and within hours, confessed to the police that he had entered the tavern for the express purpose of robbing it. The primary issue in dispute at Brown's trial on the federal charges was whether his actions had the requisite effect on interstate commerce to support a Hobbs Act violation. Brown fails to suggest how his preindictment state plea in any sense impacted his ability to mount a defense to the issue of whether his actions affected interstate commerce.

Brown is similarly unable to show that the delay was prompted by a desire to gain a tactical advantage at trial. While Brown concedes that he has no direct evidence of bad faith, he would have us infer an improper prosecutorial motive merely from the fact that the filing of the federal indictment followed his plea in state court. This inference is untenable, however, for essen-

tially the same reasons as discussed above. There are no grounds for assuming that the prosecution believed that disposition of the state charges would in some sense ease its burden of proving that Brown's acts affected interstate commerce sufficiently to support the federal charges. Moreover, we see little value in a rule that would require dismissal of a federal indictment simply because a defendant earlier pleaded guilty to state charges involving the same underlying conduct. Such a rule would put federal prosecutors in the uncomfortable position of having to indict defendants immediately after the state charges were brought simply to ensure that a subsequent federal indictment would not thereafter be dismissed as untimely.

Finally, the delay in this case was eleven months. While an eleven-month delay is not insubstantial, this court has previously upheld even longer periods of preindictment delay as consistent with due process. *See, e.g., DeClue,* 899 F.2d at 1469 (upholding delay of at least thirty-three months); *Atisha,* 804 F.2d at 927–28 (upholding delay of at least twenty-nine months); *Brown,* 667 F.2d at 568 (upholding delay of approximately five years). Accordingly, we affirm the district court's order denying Brown's motion to dismiss the federal charges on grounds of preindictment delay.

### III

■ Brown next argues that the evidence introduced at trial was insufficient to support his conviction under count one because the government failed to prove that his conduct affected interstate commerce sufficiently to fall within the purview of the Hobbs Act. We review challenges to the sufficiency of evidence to support a criminal conviction to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Brown's challenge requires us to revisit the question of to what degree an activity must affect interstate commerce to support a conviction under a federal statute predicated on the Commerce Clause. The Hobbs Act proscribes extortion or attempted extortion that obstructs, delays, or affects interstate commerce "in any way or degree." 18 U.S.C. § 1951(a). The Supreme Court has held that the Act's "broad language manifest[s] a purpose to use all the constitutional power Congress has to punish interference with interstate commerce." *Stirone v. United States,* 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960). In *United States v. Harding,* 563 F.2d 299 (6th Cir.1977), *cert. denied,* 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978), this court adopted a *de minimus* rule, holding that, to support a conviction under the Hobbs Act, "no more than a minimal effect on interstate commerce need be shown." *Id.* at 302. The *de minimus* rule has found widespread acceptance in the other courts of appeals as well. *See, e.g., United States v. Devin,* 918 F.2d 280, 293 (1st Cir.1990); *United States v. Traitz,* 871 F.2d 368, 390 (3rd Cir.), *cert. denied,* 493 U.S. 821, 110 S.Ct. 78, 107 L.Ed.2d 44 (1989); *United States v. Hoelker,* 765 F.2d 1422, 1424 (9th Cir.1985), *cert. denied,* 475 U.S. 1024, 106 S.Ct. 1219, 89 L.Ed.2d 330 (1986); *United States v. Billups,* 692 F.2d 320, 331 n. 7 (4th Cir.1982), *cert. denied,* 464 U.S. 820, 104 S.Ct. 84, 78 L.Ed.2d 93 (1983); *United States v. Hedman,* 630 F.2d 1184, 1195 (7th Cir.1980) (en banc), *cert. denied,* 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981); *United States v. Sander,* 615 F.2d 215, 218 (5th Cir.) (requiring "minimal effect" on interstate commerce), *cert. denied,* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980); *United States v. Rabbitt,* 583 F.2d 1014, 1023 (8th Cir.1978) ("[a] threatened effect on interstate commerce is sufficient"), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

More recently, this court has noted that "[t]here is no requirement [under the Hobbs Act] that there be an actual effect on interstate commerce." *United States v. Peete,* 919 F.2d 1168, 1174 (6th Cir.1990). Rather, the Act's interstate commerce requirement, "especially in cases of attempts, has been read broadly to allow purely intra-

state activity to be regulated under the theory that there was a *realistic probability* that the activity would have affected interstate commerce." *Id.* at 1175.

At trial, the prosecution introduced the testimony of Michael Fowler, an inventory manager for the Ajax Turner Company, a wholesale beer and snack distributor for the Anheuser–Busch Company. Fowler testified that, during the year immediately preceding Brown's attempted robbery, Ajax Turner sold beer to Lisa's Just in Time, and that all of the beer distributed by Ajax Turner to Lisa's Just In Time was manufactured outside the state of Tennessee.

The United States contends that Fowler's testimony was sufficient as a matter of law to find the requisite effect on interstate commerce on the authority of *United States v. Richardson,* 596 F.2d 157 (6th Cir.1979). We agree. In *Richardson,* this court upheld a conviction under the Hobbs Act where the defendant received payoffs from various nightclub operators who sold alcoholic beverages originating from outside the state. The court found it immaterial that the beverages were purchased from local distributors rather than from outside the state. The court reasoned:

> While it appears beyond dispute that the illicit operators in the instant case purchased the items in question from local Tennessee distributors instead of making direct purchases from sellers outside the state, the Court is of the opinion that this fact does not so lessen the effect of these transactions on interstate commerce as to place them beyond the reach of [the Hobbs Act]. The illicit operators purchased these items from local distributors who in turn had purchased them from outside Tennessee. Any fluctuation in the amount purchased by these illegal businesses in turn affected the amount of these items purchased in interstate commerce.

*Id.* at 161; *see also United States v. Scaife,* 749 F.2d 338, 347–48 (6th Cir.1984) (finding requisite effect on interstate commerce where defendants robbed store stocking goods from outside of state); *cf.*

*United States v. Robinson,* 763 F.2d 778, 781 (6th Cir.1985) (selling of contraband liquor manufactured outside of state has sufficient effect on interstate commerce to support RICO conviction).

Brown attempted to rob a tavern that, like the nightclubs in *Richardson,* purchased goods from local distributors who in turn purchased goods from outside of the state. Had Brown's heist been successful, there is a realistic probability that the depletion of the bar's assets would have affected the amount of its purchases of beer having moved through interstate commerce. Under our prior decisions, the prosecution clearly met its burden of showing the necessary nexus between the attempted robbery and interstate commerce to support Brown's conviction.

With that said, we feel obliged to add that we are unable to fathom why the United States felt compelled to pursue this prosecution in light of Brown's prior state court conviction and sentence for the attempted robbery. Given the Hobbs Act's undeniably broad reach, the United States could in theory prosecute virtually every would-be thief who had been prosecuted and sentenced for the conduct under state law, no matter how trivial the amount at issue. We question whether Congress ever intended the Hobbs Act to lead to this kind of "doubling" of sentences. Nevertheless, we recognize that any change must come from Congress rather than the courts. Having found that the evidence at trial supported the jury's finding that Brown's acts affected interstate commerce, we affirm Brown's conviction.

## IV

■ As a final matter, Brown asks that we find error in the district court's refusal to reduce his offense level under United States Sentencing Commission, *Guidelines Manual,* § 3E1.1(a) (Nov.1991), for accepting responsibility for his crime. In reviewing a district court's decision regarding a defendant's acceptance of responsibility, " 'the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it

is without foundation.'" *United States v. Wilson*, 878 F.2d 921, 923 (6th Cir.1989) (quoting U.S.S.G. § 3E1.1, comment. (n.5)).

Upon his arrest, Brown confessed to police that he had entered Lisa's Just In Time intending to rob it. In a two-page statement furnished to the United States Probation Office, however, Brown contradicted his earlier confession and maintained that he had actually entered the tavern intending to shoot someone who had sold him diluted cocaine, and that his earlier statement to the police was unreliable because he was high on cocaine at the time. He also averred that he pleaded guilty to the state charges merely to avoid the possibility of a greater sentence. On these facts, we cannot say that the court erred in denying Brown credit for acceptance of responsibility.

V

In light of the foregoing, we AFFIRM Brown's conviction and sentence in all respects.