**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Augustine BANKS, Defendant–**
**Appellant.**

Nos. 00–5716, 00–5923.

United States Court of Appeals,
Sixth Circuit.

Oct. 3, 2001.

Before KEITH, NORRIS, and BATCHELDER, Circuit Judges.

PER CURIAM.

Defendant-appellant Augustine Banks appeals his judgment of conviction and sentence for filing and/or aiding and abetting another with the filing of false tax claims in violation of 18 U.S.C. §§ 2 and 287 (Counts 1–5), submission of a fraudulent statement in violation of 26 U.S.C. § 7204 (Count 8), and filing or otherwise submitting false income statements in violation of 18 U.S.C. §§ 1001–1002 (Counts 9–10). Banks pled guilty, resulting in the dismissal of two counts of the indictment. On appeal, Banks alleges that the district court erred in denying his motions to dismiss for 1) pre-indictment delay, 2) violations of the speedy trial clause of the Sixth Amendment, and 3) legal insufficiency of the indictment. Banks also contends that the district court erred in denying his motion to withdraw his plea and in its application of the sentencing guidelines. For the foregoing reasons, we AFFIRM.

## I. BACKGROUND

The underlying offenses concern the submission of tax return documents for the 1992 tax year. Specifically, several individuals submitted tax returns claiming to have been employed by DeClimax Lounge,

a Nashville based nightclub owned by Augustine Banks.

During April 1993, the IRS Criminal Investigation Division ("CID") received a call from an employee of Jackson Hewitt Tax Service regarding two individuals who were attempting to file tax returns with tax withholding forms ("W–2s") issued by DeClimax Lounge. These individuals were later determined to be Annie Howse and Sandy Smith.

When Ms. Howse and Ms. Smith returned to Jackson Hewitt to pick up the refund checks they were interviewed by CID agents. Howse and Smith admitted that they had never worked for DeClimax Lounge and that the W–2s were false. They further admitted that Banks had provided the W–2s and filled out the tax returns. At the instruction of the CID agents, Howse and Smith called Banks and arranged for him to pick them up from the Jackson Hewitt offices. Upon being interviewed, Banks stated that Ms. Howse and Ms. Smith did work for him, though he could not identify which individual was which, and could not describe the jobs they had allegedly performed. Further investigation revealed that Banks had induced several individuals to file tax returns using false W–2 statements and that these individuals were required to give Banks a portion of their respective refund checks.

An indictment in this matter was rendered on January 7, 1998 and trial was scheduled for September 1, 1998. After several continuances, all requested by Banks, a trial date was set for October 12, 1999. However, shortly before the October 1999 trial date, Banks's attorney withdrew from the matter. The trial court issued another continuance until new counsel could be appointed and, subsequently, a new trial date was set for January 12, 2000.

On January 12, 2000, the district court heard several motions filed on Banks's behalf. Each of these motions was denied. Consequently, on January 13, 2001, Banks entered a plea agreement. Soon after, he attempted to withdraw his plea citing ineffective assistance of his previous counsel; this request was also denied by the district court. Banks then filed this timely appeal from the rulings of the district court.

## II. DISCUSSION

### A. Pre–Indictment Delay

Banks first alleges that the district court erred in denying his motion to dismiss the indictment because the government violated his Fifth Amendment right to due process due to pre-indictment delay. The indictment in this matter was not returned until January 1998, almost five years after the CID's interview of Banks. We review the denial of a motion to dismiss based upon pre-indictment delay for an abuse of discretion and the related questions of fact are reviewed under a clearly erroneous standard. *See United States v. Scott,* 579 F.2d 1013, 1014 (6th Cir.1978).

The Supreme Court has held that "the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that ... pre-indictment delay ... caused substantial prejudice to a defendant's rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). To prove unconstitutional pre-indictment delay, the defendant must first prove "substantial prejudice to his right to a fair trial." *United States v. Brown,* 959 F.2d 63, 66 (6th Cir.1992).

The instant matter is very similar to the facts of *United States v. Brown,* 667 F.2d 566 (6th Cir.1982). There, in a prosecution for tax evasion, the delay between the government's investigation and the return of the indictment was over five years. The defendants in that matter claimed that they had been prejudiced because important evidence had been destroyed and their accountant was unable to reconstruct the events. This Court held that dismissal is warranted "only when the defendant shows substantial prejudice to his right to a fair trial and that the delay was an intentional device by the government to gain a tactical advantage" and rejected the assertion of error. *Id.* at 568 (citing *United States v. Marion,* 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)).

In this case, while arguably there was significant delay between the actual conduct giving rise to the action and the indictment, Banks failed to establish that he was prejudiced and that the delay provided a tactical advantage to the government. Banks nakedly asserted that exculpatory documents were lost and that he could no longer find witnesses who could testify that his unindicted co-conspirators did work for him. However, bare assertions, without supporting evidence, are not sufficient to demonstrate prejudice. *Id.* Moreover, even if this Court were to accept Banks's assertions as true, he failed to put forth a "scintilla" of evidence which demonstrates that the government delayed for the purpose of gaining a tactical advantage. *United States v. Brown,* 959 F.2d at 66. Our Circuit has recognized that where delay is due to simple negligence and not a concerted effort by the government to gain an advantage, no due process violation exists. *See United States v. Brown,* 959 F.2d 63, 66 (6th Cir.1992). Accordingly, this claim must fail.

### B. Speedy Trial

Banks next argues that the district court erred in refusing to grant his motion to dismiss based upon violations of the Speedy Trial Clause of the Sixth Amend-

ment. The Supreme Court has articulated a four-part balancing test for courts to use in considering whether a defendant's right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant has asserted his right; and (4) the prejudice suffered by the defendant as a result of the delay. *See Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

■ In the instant matter, the trial date was continued six times; each continuance was necessitated by Banks. The first five continuances were granted upon Banks's requests wherein he specifically waived his right to a speedy trial in writing. With respect to the last continuance, the district court noted that it was granted soon after new counsel was appointed on Banks' behalf. Most assuredly, it was an effort by the district court to provide Banks with competent representation at trial by allowing his new counsel to become familiar with the case. The right to a speedy trial is not intended to "provide defendants with tactics for ensnaring the courts into situations where charges will have to be dismissed on technicalities." *United States v. Cianciola*, 920 F.2d 1295, 1298–1300 (6th Cir.1990) (quoting *United States v. Bufalino*, 683 F.2d 639, 646 (2d Cir.1982)). As Banks's "sandbagging" was the cause for each of the continuances issued in this matter, there is no violation of the speedy trial act. *Id.* (finding that the defendant's repeated requests for continuances suggested "sandbagging").

C. Legal Insufficiency of the Indictment

In attempting to demonstrate the legal insufficiency of the indictment, Banks makes two separate assertions. First, he claims that the government failed to allege all of the elements of the crimes in the indictment. Next, he claims that the indictment is duplicitous in that "it join[s]

into a single count two or more distinct and separate offenses." (Appellant's Br. at 34) We address each of these arguments in turn.

■ In support of his contention that the indictment is facially defective or insufficient, Banks claims that Counts Nine and Ten of the indictment fail to allege that he falsified a material fact or that the false statements were "material." Materiality is an essential element of the crime of making a false statement under 18 U.S.C. § 1001. *See, e.g., United States v. Notarantonio*, 758 F.2d 777, 785 (1st Cir.1985) (stating that a violation of 18 U.S.C. § 1001 requires: "1) a statement that was 2) false, 3) material, 4) made knowingly and willfully, and 5) made in a matter within the jurisdiction of a federal agency") Banks contends that Counts Nine and Ten of the indictment, charging violations of 18 U.S.C. § 1001, should be dismissed for failure to specifically allege materiality of falsified facts. In so arguing, he relies upon the Supreme Court's holding in *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). However, *Gaudin* merely held that the issue of materiality is for the jury, not that materiality must be alleged in the indictment. *Id.* at 522–23, 115 S.Ct. 2310. In this case, the materiality of the alleged false statements is apparent from the wording of Counts Nine and Ten. Both counts raise an inference of materiality in that they allege that Banks aided, abetted and caused certain individuals to submit falsified income tax returns to a tax preparer and electronic return originator. These submissions significantly affected the IRS's evaluation of the tax liability of those individuals. Therefore the district court did not err in failing to dismiss Counts Nine and Ten.

■ Defendant next argues that argues that Counts One through Five of the indictment are duplicitous because they join

into a single count two or more distinct and separate offenses. However, the fact that the government charges violation of a statute by both principal liability and liability for aiding and abetting does not render an indictment duplicitous. *See United States v. Dean*, 969 F.2d 187, 195 (6th Cir.1992) (holding that principal liability and liability for aiding and abetting charged in same count does not render count duplicitous). Consequently, the district court did not err in finding the indictment legally sufficient.

D. Withdrawal of the Guilty Plea

■ Fed. R. of Crim. P. 32(e) provides that: "If a motion to withdraw a plea of guilty is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." The purpose of the rule is "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant "to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty.'" *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir.1991) (quoting *United States v. Carr*, 740 F.2d 339, 345 (5th Cir.1984)). In determining whether a defendant invoking Rule 32(e) has shown a "fair and just reason," courts should consider the following factors: "(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) the potential prejudice to the government if the motion to withdraw

is granted." *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir.1994).

The district court distilled Banks's arguments in support of his motion to withdraw his plea as follows:

1. Absence of defense witnesses;
2. Inability of government witnesses to testify due to passage of time;
3. Cost and difficulty related to Defendant's travel from Boston to Nashville;
4. Alleged government refusal to turn over evidence;
5. Incompetence of defense counsel, Caryll Alpert, contributed to his plea;
6. Caryll Alpert's alleged statement that Defendant could not get a fair trial in front of the Court or a jury in Middle Tennessee due to his race and color;
7. Continuances were obtained over Defendant's objections;
8. Withdrawal of Ms. Alpert as Defendant's counsel and the change of AUSA's [sic];
9. Defense counsel's failure to file pre-trial motions;
10. The denial by the Court of all motions filed by Defendant;
11. Trial did not begin as anticipated on January 11, 2000, resulting in the trial proceeding past January 14, 2000, forcing Defendant, who is a resident of Massachusetts, to find a place to stay in Nashville;
12. The IRS has records belonging to Defendant; and
13. Defendant was on medication at the time of his plea which affected his ability to understand the proceedings.

(J.A. at 25–26.)

■ Ultimately, the district court found that Banks failed to provide any evidence

establishing "a fair and just reason" for the withdrawal of his guilty plea. In addition, the district court found that each of the grounds for the motion were refuted by the government through the testimony of Banks's former counsel, Caryll Alpert and James Weatherly, Jr. Despite Banks's claim that his decision to plead guilty on the day of trial was ill-advised and made in haste, Mr. Weatherly testified that he spent considerable time discussing a guilty plea with Banks prior to the trial and that Banks fully understood the meaning and consequences of entering such a plea. As such, Banks has failed to provide any credible evidence to show that he was rushed into the decision and that his plea was entered without his full knowledge and understanding.

Moreover, a review of the underlying proceedings reveals that Banks indicated, on the record, that he understood the rights he was waiving by entering the plea, that he was satisfied with his attorney and that he was not under the influence of alcohol or drugs. Accordingly, the district court's denial of Banks's motion to withdraw his plea should be affirmed.

E. Application of the Sentencing Guidelines

Applying the 1992 Sentencing Guidelines, the district court sentenced Banks to eighteen months of incarceration. Banks now contends that the district court erred in refusing to grant a downward departure for his acceptance of responsibility, by finding that he was a leader/organizer of the criminal activity, in determining that the amount of loss exceeded $10,000, and by imposing restitution. We reject each of these claims as follows.

1. Acceptance of Responsibility Departure

■ Banks asserts that he accepted responsibility and should have received a two-level sentence reduction. However, attempting to withdraw a guilty plea is grounds for denial of acceptance of responsibility reduction. *See United States v. Patrick,* 988 F.2d 641, 645–646 (6th Cir. 1993). Additionally, there is no error in denying an acceptance of responsibility reduction when a defendant pleads guilty on the day of trial. *United States v. Chatman,* 119 F.3d 1335, 1342 (8th Cir.1997). As Banks pled guilty on the day of trial and, subsequently, attempted to withdraw his plea, there was no error when the district court denied his request for a downward departure.

2. Leader/Organizer of the Criminal Activity

■ Banks also claims that he was not a leader/organizer and should not have received the leader/organizer enhancement. However, the government established that Banks held meetings for the participating individuals at his business and assisted these individuals in filling out the returns. Moreover, the evidence demonstrated that defendant recruited these individuals and received a share of their false returns. Accordingly, the evidence is sufficient to warrant an enhancement for Banks's leadership role.

3. Amount of Losses Attributed to Banks

■ Banks further asserts that he should not have been sentenced based on the intended losses but, rather, on the losses actually suffered.[1] However, in

---

**1.** Banks and his unindicted co-conspirators caused checks to be issued by the IRS in an amount totaling $12,592. However, Annie Howse and Sandy Smith never received their refund checks as the checks were intercepted at the Jackson Hewitt offices. Accordingly, the actual amount of loss totaled $9,913. Of this amount, Banks received $5,356.

*United States v. Fleming,* 128 F.3d 285, 287 (6th Cir.1997), this Court held that an individual engaged in a fraudulent tax scheme through the use of false W–2s is properly sentenced based on the amount of loss intended. Thus, the district court did not err in finding that the amount of loss exceeded $10,000.

### 4. Restitution

 Banks asserts that the district court erred in assessing restitution in the amount of $1,879 as he is a pauper and has no ability to pay. However, inasmuch as the amount of actual losses exceeded $9,000, the district court clearly considered Banks's indigency in determining the amount of restitution to be assessed. Moreover, in arguing his meager prospects for employment and limited resources, Banks has not demonstrated extraordinary circumstances which would warrant special consideration; most defendants emerge from incarceration without adequate means to pay restitution. Accordingly, the district court did not err in assessing restitution.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment and sentence of the Honorable John T. Nixon of the United States District Court for the Middle District of Tennessee.