**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0306n.06
Filed: April 20, 2005

No. 03-5096

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | **ON APPEAL** FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| LARRY JOE COLLINS, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| | ) | |
| _____ | ) | |

**Before: BATCHELDER and MOORE, Circuit Judges, and CALDWELL,**[*] **District Judge.**

**KAREN K. CALDWELL, District Judge.** Defendant-Appellant Larry Joe Collins ("Collins") appeals his conviction on seven federal firearms charges and one count of robbery affecting interstate commerce in violation of 18 U.S.C. § 1951 (the "Hobbs Act"). He argues that: 1) the district court denied him his constitutional right to represent himself; 2) insufficient evidence existed to support a finding that his robbery affected interstate commerce as required for a Hobbs Act conviction; and 3) the district court erred by permitting him to be dressed in prison clothes throughout the trial. In a supplemental letter brief filed after the parties' initial briefs, Collins also argues that his sentence should be vacated in light of *United States v. Booker*, 543 U.S. _, 125 S.Ct.

_____

[*]The Honorable Karen K. Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

738 (2005). For the following reasons, we **AFFIRM** Collins's conviction but **VACATE** his sentence and **REMAND** this action to the district court for resentencing in a manner consistent with *Booker*.

## I. BACKGROUND

### A. Three Public Defenders and Four Trial Continuances.

Collins was indicted on various federal firearms charges and one count of robbery affecting interstate commerce in violation of the Hobbs Act. On February 2, 2001, the district court appointed the first public defender to represent Collins. On October 3, 2001, the court replaced the first public defender with a second public defender. On October 22, 2001, on the second public defender's motion and Collins's *pro se* motion, the district court permitted the second public defender to withdraw as Collins's attorney and appointed a third public defender, Ashley Ownby ("Ownby"), to defend Collins.

On January 9, 2002, the district court set a trial date of February 11, 2002. On January 18, 2002, the court granted Ownby's motion to continue the trial, moving the trial date to April 8, 2002. On April 5, 2002, the district court moved the trial date to May 13, 2002. The court later granted another motion to continue by Ownby and the trial was set for June 10, 2002. The Court then granted a final motion by Ownby to continue and moved the trial date to August 12, 2002.

### B. August, 2002 Hearing on Removal of Third Public Defender and a Fifth Continuance.

Prior to trial, Collins moved *pro se* for Ownby's removal as his attorney. On August 12, 2002, the date that trial was set to begin, the district court heard arguments on the motion. The court told Collins that, if it granted Collins's motion, it would not appoint another lawyer to represent him and he would have to represent himself. Collins explained that he did not believe Ownby had his

2

best interests at heart, but stated, "I am not competent to represent myself. I would like for the Court to appoint me an attorney who would . . . ." The court repeated that it would not appoint another lawyer to represent Collins.

A lengthy discussion followed in which Ownby provided the court with a letter from the psychiatrist at the facility at which Collins was housed stating that Collins had been very aggressive while in custody. Ownby also explained that the psychiatrist at the facility had informed him that, if Collins's medication were "changed or varied in any way, that conceivably would put him in a position to where he would not be able to help himself or assist counsel or anything in that neighborhood." Collins repeatedly expressed his unhappiness with Ownby. The district court made clear that, if it permitted Ownby to withdraw, it would not appoint Collins another attorney.

Collins stated, "I would be crazy, Your Honor, to go to trial with him. I would rather just sit here mute. . . ." The district court then made a "finding that [Collins] has knowingly and intelligently elected to release Mr. Ownby from representing him. So he's waiving his right to counsel. Therefore, Mr. Collins will be proceeding in this case *pro se*."

The United States' counsel expressed concern that the record was not clear that Collins was making a knowing and voluntary waiver of his right to counsel. The government's counsel stated that, while Collins had made it clear that he did not want Ownby to represent him, he had never actually stated that he wanted to represent himself. After more discussion, the district court then asked Collins, "Do you wish to waive your right to have an attorney represent you, and proceed on your own?" Collins responded, "Sir, I would like to have an attorney appointed to me, somebody who can work with me." The court then stated, "Based upon your last response, the Court is going to keep Mr. Ownby on, then. Okay. Mr. Ownby will continue to represent you."

3

Later in the hearing, Collins stated, "Well, I'm representing myself. I'm representing myself. And, like you said, I had no choice. . ." The court responded, "Because of your responses, I'm going to keep Mr. Ownby on your case. He represents you. He is your lawyer." Collins later stated, "But I don't want Mr. Ownby to represent me. I'm saying even if I was sitting here trying to set forth a defense for myself, I feel like somewhere along the line, even if I was forced to set forth a defense for myself, . . . ." The court denied the motion for Ownby's removal and continued the trial until September 9, 2002.

### C. September, 2002 Hearing Regarding Waiver of Counsel.

On the first day of trial, during jury selection, and in front of the prospective jurors, Collins again stated, "I still want to represent myself, but two weeks ago they took me off my medicine and at this time I'm sick and I can't even – I can't even function properly at – right now to. . . ." The district court later advised Collins, "If you would like to represent yourself and waive your right to an attorney, the Court will hear you. " Collins stated, "I'd like to represent myself."

After the jurors were dismissed, the district court recounted that, at the prior hearing, it had been unable to find that Collins had knowingly and voluntarily waived his right to counsel and asked Collins, "Mr. Collins, have you changed your mind, then? Do you wish to waive your right to have any attorney represent you?" Collins responded, "I would like to represent myself. . . But this morning I was sick. I was having a panic attack. . . ." The court again asked, "Do you wish to waive your constitutional right to have a lawyer represent you, and represent yourself? You can answer that question yes or no." Collins responded, "No, I don't wish to waive my constitutional right. . . to have a lawyer represent me. But . . . . " The district court ended the matter, stating, "Thank you. That's all," and announcing that court would stand in recess.

4

**D.        Testimony Regarding Robbery's Affect on Interstate Commerce.**

At trial, Gregory Martin, the owner of the Sunset Inn Barbecue Restaurant in Chattanooga, Tennessee (the "Sunset Inn") testified that one evening he was behind the counter at the restaurant, a man came in, pulled a gun out, and demanded that Martin give him all the money in the restaurant's cash register.  Martin testified that the man left the restaurant with the money and that the man who committed the robbery was Collins.  Martin testified that Collins took approximately $700 from the restaurant.

Martin testified that the Sunset Inn bought beer from Beasley Distributors ("Beasley") and products from Jacobs Wholesale Paper Company ("Jacobs") at the time of the robbery.  Martin also testified that, occasionally, the Sunset Inn shipped meat to out-of-state customers and did at the time of the robbery.

Reuben Lawrence, an area manager with Beasley, testified that the Sunset Inn has been Beasley's customer for at least 27 years.  He testified that the majority of beer that Beasley sells to the Sunset Inn is made in Virginia or Florida and that none is made in Tennessee.  Mike Hennen, the general manager for Jacobs, testified that the Sunset Inn had been Jacobs' customer since at least 1968. He testified that Jacobs sold the Sunset Inn salad dressing, ketchup and paper products including napkins and food trays. He testified that all of the items sold to the Sunset Inn are manufactured in states other than Tennessee.

On the third day of trial, the jury returned a verdict finding Collins guilty of violating the Hobbs Act and various federal firearms statutes. On January 8, 2003, the district court entered a judgment sentencing Collins to imprisonment for a term of 400 months.  Collins then filed a notice of appeal.

## II. ANALYSIS

### A. Constitutional Right to Self-Representation.

As his first issue on appeal, Collins asserts that he clearly and unambiguously requested to represent himself and that the trial court erred by not allowing him to do so. The government asserts that the standard of review for the district court's conclusion that Collins would be represented by counsel should be "abuse of discretion" because this is the standard of review when a district court denies a defendant's request to represent himself. *See Robards v. Rees*, 789 F.2d 379, 384 (6th Cir. 1986). The decision under review in this case, however, is not a district court's denial of a defendant's clear request to represent himself. Instead, we are asked to review the district court's conclusion that Collins did not ever actually assert his right to represent himself or waive his right to counsel.

This Court reviews *de novo* the question of whether a constitutional right has been waived by an appellant. *United States v. Ross*, 245 F.3d 577, 583 (6th Cir. 2001). *See also U.S. v. McBride*, 362 F.3d 360, 365 (6th Cir. 2004)(noting that the Sixth Circuit has applied both "plain error" and *de novo* review to a district court's conclusion that a defendant *has* waived his right to counsel but that "[o]ur sister circuits uniformly apply a *de novo* standard" to such cases). Thus, it would seem that *de novo* review is appropriate for the district court's determination that Collins did not waive his right to counsel or assert his right to represent himself. Because the result in this case is the same under either an "abuse of discretion" standard or *de novo* review, we need not decide here which standard applies.

The Sixth Amendment guarantees criminal defendants the right to represent themselves at trial. *Faretta v. California*, 422 U.S. 806, 819-20 (1975). The right to self-representation and the

6

right to counsel are "two faces of the same coin, in that the waiver of one right constitutes a correlative assertion of the other." *United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970)(quotations and citation omitted). Thus, when a defendant asserts his right to self-representation, he necessarily waives his right to counsel. Because criminal defendants will likely fare better with the assistance of counsel than without, however, a defendant will be permitted to represent himself only when he "knowingly and intelligently" relinquishes his right to counsel. *Faretta*, 422 U.S. at 835 (citation omitted).

"[C]ourts indulge in every reasonable presumption against waiver" and this "strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of pretrial proceedings." *Brewer v. Williams*, 430 U.S. 387, 404 (1977). A waiver requires a "clear and unequivocal" assertion of the right to self-representation. *Faretta*, 422 U.S. at 835. This is to protect a defendant against an "inadvertent waiver of the right to counsel by a defendant's occasional musings on the benefits of self-representation." *United States v. Frazier-El*, 204 F.3d 553, 558-59 (4th Cir. 2000)(quoting *United States v. Arlt*, 41 F.3d 516, 519 (9th Cir. 1994)).

Requiring a defendant to clearly and unequivocally waive his right to counsel also prevents him from "manipulating the mutual exclusivity of the rights to counsel and self-representation." *Frazier-El*, 204 F.3d. at 559. "The defendant must make a choice, and he should not be permitted to manipulate his choice so that he can claim reversible error on appeal no matter which alternative he apparently chose in the District Court." *Conder*, 423 F.2d at 908.

On the August 12, 2002 trial date, the district court conducted a lengthy hearing in which Collins was given ample opportunity to express whether he wanted counsel to represent him or wanted to proceed *pro se*. Then, on September 9, 2002 – also a day that trial of this matter was set

7

to begin – the district court again permitted Collins to assert his right to represent himself. Collins did not clearly and unequivocally waive his right to counsel or assert his right to proceed *pro se* in either appearance.

In fact, on two occasions the district court directly asked Collins if he wished to waive his right to counsel and represent himself. Both times, Collins explicitly responded that he did not wish to waive his right to counsel and that he wanted a lawyer to represent him. The following exchange occurred in the August hearing:

District Court: Based upon the discussion that we have just had, do you wish to waive your right to have an attorney to represent you, and proceed on your own?

Collins: Sir, I would like to have an attorney appointed to me, somebody who can work with me.

In the September hearing, the following exchange occurred:

District Court: Do you wish to waive your constitutional right to have a lawyer represent you, and represent yourself? You can answer that question yes or no.

Collins: No, I don't wish to waive my constitutional right. . . to have a lawyer represent me. But. . . .

This statement was Collins's last statement on the subject. Thus, Collins's last indication to the district court was that he did not wish to waive his right to counsel and did not wish to represent himself. The district court could not have reasonably concluded in the face of these statements that Collins had clearly and unequivocally waived his right to counsel. Even if any of Collins's statements that he wanted to represent himself made at various times in the hearings were viewed as waivers of the right to counsel, the later statement was a clear and unequivocal withdrawal of that assertion.

Moreover, in the August hearing, Collins directly stated, "I am not competent to represent myself." Likewise in the September hearing, Collins indicated that he was not competent to represent himself because, "at this time I'm sick and I can't even – I can't even function properly at – right now. . . ." These are not clear and unequivocal waivers of the right to counsel.

Collins was given ample opportunity with two hearings and five trial continuances to clearly and unequivocally assert his right to self-representation or to waive his right to counsel. At some point, however, the district court had to end hearings on the matter and proceed to trial. Collins did not clearly and unequivocally waive his right to counsel. In fact, he affirmatively stated that he did not wish to do so and that he wanted a lawyer. Given those statements and the presumption against waiver of the right to counsel, the district court correctly concluded that Collins had not clearly and unequivocally waived his right to counsel.

### B.    The Hobbs Act Conviction.

Next, Collins argues that his conviction for violating the Hobbs Act should be reversed because the government failed to meet its burden of showing the robbery had a sufficient effect on interstate commerce as required under the Hobbs Act.

The Hobbs Act proscribes robbery or attempted robbery that obstructs, delays or affects interstate commerce "in any way or degree." 18 U.S.C. § 1951(a). In *United States v. Harding*, 563 F.2d 299 (6th Cir. 1977), the Sixth Circuit adopted a *de minimis* rule in applying the Hobbs Act and held that, to support a conviction under the Act, "no more than a minimal effect on interstate commerce need be shown." *Id.* at 302. Further, this Court has held that, "[t]here is no requirement [under the Hobbs Act] that there be an actual effect on interstate commerce." *United States v. Peete*, 919 F.2d 1168, 1174 (6th Cir. 1990). Instead, the Act "has been read broadly to allow purely

9

intrastate activity to be regulated under the theory that there was a *realistic probability* that the activity would have affected interstate commerce." *Id*. at 1175.

Collins's argument with regard to the Hobbs Act is not entirely clear. He appears to argue that, in accordance with *United States v. Wang*, 222 F.3d 234 (6th Cir. 2000), to support a Hobbs Act conviction, the government was required to prove that his robbery had a "substantial effect" on interstate commerce because he robbed an individual and not a business. He may also be arguing that the "*de minimis*" test – whether applied to the robbery of a business *or* an individual – is an unconstitutional extension of federal jurisdiction after the Supreme Court's decisions in *United States v. Lopez*, 514 U.S. 549 (1995), *United States v. Morrison*, 529 U.S. 598 (2000), and *Jones v. United States*, 529 U.S. 848 (2000). Finally, Collins appears to put forth a "sufficiency of evidence" argument with his assertion that the government's evidence that the Sunset Inn sold beer manufactured in other states and bought napkins and condiments made in other states did not show that the Sunset Inn was involved in interstate commerce for purposes of the Hobbs Act.

The parties agree that Collins did not raise these arguments with the district court and that this Court should review the Hobbs Act conviction for plain error. Fed. R. Crim P. 52(b). The purpose of plain error review is to correct egregious errors that directly lead to a miscarriage of justice. *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir. 1988). Plain error review consists of four distinct inquiries:

> First, we are to consider whether an error occurred in the district court. Absent any error, our inquiry is at an end. However, if an error occurred, we then consider if the error was plain. If it is, then we proceed to inquire whether the plain error affects substantial rights. Finally, even if all three factors exist, we must then consider whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity, or public reputation of the proceedings.

*United States v. Vincent*, 20 F.3d 229, 234 (6th Cir. 1994)(citations omitted).

The word "plain" is "synonymous with 'clear,' or, equivalently, 'obvious.'" *United States v. Olano*, 507 U.S. 725, 734 (1993). To satisfy this test, the error must be plain "under current law." *Id.* "Current law" is law that exists at the time of appellate review. *Johnson v. United States*, 520 U.S. 461, 468 (1997). "Plain errors are limited to those harmful ones that are so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputation of the trial." *United States v. Goodlett*, 3 F.3d 976, 978 (6th Cir. 1993) (quoting *United States v. Causey*, 834 F.2d 1277, 1281 (6th Cir. 1987)).

Relying on *Wang*, Collins contends that, because he robbed an individual rather than a business, the government was required to show that the robbery had a "substantial" effect on interstate commerce. Such an argument is without merit. Collins walked into a restaurant, pulled out a shotgun and demanded that an individual standing behind the counter of the restaurant give him the money in the cash register. It cannot be argued that Collins robbed an individual; thus, *Wang* does not apply.

To the extent that Collins argues that the *de minimis* test is unconstitutional where the victim is a business, the argument is contrary to current law in the Sixth Circuit and cannot prevail on plain error review. For this argument, Collins cites to *Lopez*. In *United States v. Smith*, 182 F.3d 452 (6th Cir. 1999), however, the Sixth Circuit explicitly stated that "the *de minimis* standard for the interstate commerce effects of individual Hobbs Act violations survived *Lopez*." *Id.* at 456. Collins also cites to *United States v. Morrison*, 529 U.S. 598 (2000), and *Jones v. United States*, 529 U.S. 848 (2000). Neither of those cases, however, involved the Hobbs Act and, thus, did not overrule the application of the *de minimis* rule. There has been no change in law in the Sixth Circuit and the *de*

11

*minimis* rule still applies to the robbery of a business even after *Morrison* and *Jones*. *See, e.g.*, *United States v. Orris*, 86 Fed. Appx. 82, 2004 WL 68534 (6th Cir.2004), *cert. denied*,124 S.Ct. 1732 (2004).

Finally, Collins argues that the evidence produced at trial was insufficient to support his conviction under the Hobbs Act because the government did not show that the Sunset Inn was sufficiently involved in interstate commerce merely by presenting evidence that the restaurant sold beer manufactured in other states and purchased napkins and condiments manufactured outside of Tennessee. This argument is also contrary to Sixth Circuit law.

In *United States v. Brown*, 959 F.2d 63 (6th Cir. 1992), the defendant robbed a small tavern. The evidence showed that the tavern sold goods that it purchased from local distributors who in turn purchased goods from outside of the state. *Id*. at 68. Finding that the evidence was sufficient to establish the requisite effect on interstate commerce, the *Brown* Court agreed with the holding in *United States v. Richardson*, 596 F.2d 157 (6th Cir. 1979), that it was immaterial that the beverages were purchased from local distributors rather than outside the state. *Brown*, 959 F.2d at 68. The Court reasoned that,

> Had Brown's heist been successful, there is a realistic possibility that the depletion of the bar's assets would have affected the amount of its purchases of beer having moved through interstate commerce. Under our prior decisions, the prosecution clearly met its burden of showing the necessary nexus between the attempted robbery and interstate commerce to support Brown's conviction.

*Id*.

The evidence in this case showed that the Sunset Inn purchased beer and supplies that were manufactured out of state. Under *Brown* and *Richardson*, this is sufficient evidence that the Sunset Inn was engaged in interstate commerce to the extent that Collins's robbery of it had at least a

12

minimal effect on interstate commerce. It is of no consequence that the products were purchased from local suppliers. In addition, here there was also evidence that the Sunset Inn engaged in some level of interstate sales.   Under Sixth Circuit precedent, the government presented sufficient evidence  that the Sunset Inn was engaged in interstate commerce to support Collins's Hobbs Act conviction.

### C.      Appearing in Prison Clothes at Trial.

Collins's final argument on appeal relating to his conviction is that the district court erred by allowing him to wear prison clothes in front of the jury during the trial.  A defendant cannot be compelled to stand trial before a jury while dressed in identifiable prison clothes.  *Estelle v. Williams*, 425 U.S. 501, 512-13 (1976).  This is because of the possible damage to "the presumption of innocence guaranteed as part of a defendant's due process right to a fair trial." *United States v. Waldon*, 206 F.3d 597, 607 (6th Cir. 2000)(citing *Estelle*, 425 U.S. at 504).

Both parties agree that this issue was not raised in the district court and is, therefore, subject to plain error review.  More significantly, Collins's failure to object to being tried in prison clothes, negates the presence of compulsion necessary to establish a constitutional violation. *Estelle*, 425 U.S. at 512-13.  The district court cannot "be faulted for not asking [Collins] or his counsel whether he was deliberately going to trial in jail clothes." *Estelle*, 425 U.S. at 512.  Because Collins never objected to the district court to wearing prison clothes, the district court did not err in permitting Collins to wear those clothes at trial.

### D.      Sentencing.

On January 12, 2005, after briefs were filed in this appeal, the Supreme Court issued its decision in *United States v. Booker*, 543 U.S. __, 125 S.Ct. 738 (2005) pursuant to which the federal

13

Sentencing Guidelines are now advisory in all cases. Collins submitted a supplemental letter brief arguing that, in light of *Booker*, he should be resentenced because the district court had sentenced him as if the guidelines were mandatory which was correct at the time of his sentencing but incorrect after *Booker*. The United States filed a letter brief stating it has no objection to this action being remanded for resentencing. After reviewing the record and the parties' supplemental letter briefs, the Court agrees that Collins's sentence should be vacated and remanded in light of *Booker*. *See United States v. Barnett*, 398 F.3d 516, 525-31 (6th Cir. 2005).

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Collins's conviction, but **VACATE** Collins's sentence and **REMAND** for resentencing consistent with *Booker*.