**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 06a0546n.06

Filed: July 31, 2006

**No. 04-1749**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee. | ) | |
| | ) | **ON APPEAL** FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF MICHIGAN |
| KEVIN K. SMITH, | ) | |
| | ) | **OPINION** |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: BOGGS, Chief Judge; SUTTON, Circuit Judge, and SCHWARZER,[*] Senior District Judge

**WILLIAM W SCHWARZER, Senior District Judge.** Kevin Smith appeals his conviction and sentence for crimes related to hiring an undercover ATF agent to kill his ex-wife. On appeal, Smith argues that the government failed to disprove his entrapment defense and to prove that he possessed a firearm beyond a reasonable doubt. Smith also argues that he should have received a competency hearing, that his Sixth Amendment right to call witnesses was violated because he could not call a witness at his pretrial detention hearing, and that the prosecutor engaged in impermissibly prejudicial questioning. Finally, Smith appeals his sentence as unlawful and unreasonable. We affirm Smith's conviction but vacate his sentence and remand for resentencing

---

[*]The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

under the now-advisory Sentencing Guidelines.

## FACTUAL AND PROCEDURAL HISTORY

Because the parties are familiar with the facts, we recite them here only to the extent necessary for our decision. Beginning in late 2002 or early 2003, Kevin Smith held numerous discussions with Mike Slaninka regarding hiring a hitman to kill his ex-wife, Monica Jarvis. Slaninka, who had previously provided information to Alcohol, Tobacco, and Firearms (ATF) agents following his 2002 arrest on an explosives charge, contacted an ATF agent regarding Smith's comments. The ATF agent gave Slaninka a tape recorder, instructed him to contact Smith, and arranged for another agent to pose as a hitman. Slaninka put Smith in touch with the undercover ATF agent, but testified that he told Smith that it was Smith's choice whether to go through with the killing. Shortly before July 1, 2003, Smith sent a package to the ATF agent containing $1000, a map to Jarvis's home, and photos of Jarvis. The ATF agent then contacted Smith to arrange delivery of a gun for use in the killing and told Smith that there would be no harm if he were to call off the plan. Smith stated that there were "no changes" to the plan.

On July 21, 2003, Smith contacted the ATF agent to arrange delivery of the weapon to be used in the killing. Early the next morning, Smith left a .25-caliber handgun with the serial numbers removed near the arranged location. ATF agents recovered the gun almost immediately after Smith's departure from the area. The ATF agent posing as the hitman also called Smith to obtain more specific details regarding where he dropped the gun, which Smith provided. Following the drop, ATF agents arrested Smith and searched his home, where they found a .22-caliber handgun.

On August 5, 2003, Smith was indicted on four counts: murder for hire, being a felon in

possession of a firearm, possessing a firearm with the serial number removed, and possessing a firearm in furtherance of a crime of violence.

On October 24, 2003, Smith filed an ex parte application for process costs and witness fees to have Slaninka testify as part of Smith's defense. Smith's application listed October 31, 2003, the date of Smith's detention hearing, as the relevant date for Slaninka's testimony. The application was not granted until November 12, 2003, after Smith's detention hearing. Smith did not make other requests to have Slaninka appear at his detention hearing and did not object to Slaninka's absence during the hearing.

During his December 2003 jury trial, Smith took the stand and admitted that he had hired a hitman to kill his ex-wife. Smith argued, however, that Slaninka had been working as a government informant and entrapped him. According to Smith, Slaninka repeatedly suggested that he kill Jarvis and stated that he knew someone who could do it. Although Smith stated that he would generally change the subject when Slaninka made such suggestions, he testified that he eventually indicated that Slaninka should contact the hitman.

Smith also testified that he had been convicted of a firearm-related felony in 1995, but gave away his guns following his conviction. He stated that his current wife owned a gun, but that he did not know where she kept it. On cross-examination, he stated that the .22-caliber gun found in his home belonged to his wife. He testified that she "went and got this gun" because of security concerns. Following this testimony, the prosecutor impeached Smith with a firearm application that indicated that Smith had purchased the gun in 1994. On his application, Smith answered "no" when asked whether he had any prior felony convictions. The prosecutor argued that this was a lie, since

Smith had been convicted of a felony in 1979 at the age of nineteen. During cross-examination, Smith admitted this prior felony, but stated that he thought he had been tried as a youthful offender and that the felony would not show up on his record. In closing argument rebuttal, the prosecutor argued that Smith had lied on his application for the gun.

On December 16, 2003, the jury found Smith guilty on all four counts. Following the verdict, Smith twice moved unsuccessfully for a determination of his competency to stand trial. On May 27, 2004, the district court sentenced Smith to 240 months' imprisonment, imposing concurrent 120-month sentences for murder for hire and being a felon in possession of a firearm, followed by two consecutive sixty-month sentences for the remaining firearm possession offenses. Smith filed a timely appeal.

## DISCUSSION

### I.    ENTRAPMENT DEFENSE

Smith contends that the government failed to disprove his entrapment defense beyond a reasonable doubt. He moved for an acquittal on December 22, 2003, within seven days of his jury verdict as required by Federal Rule of Criminal Procedure 29(c). When a timely motion for acquittal has been made, the court "views the evidence in the light most favorable to the prosecution and gives the prosecution the benefit of all reasonable inferences from the testimony." *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006).

To support an entrapment defense, Smith must first demonstrate that the government induced him to commit a crime. *United States v. Nelson*, 922 F.2d 311, 317 (6th Cir. 1990); *United States v. Meyer*, 803 F.2d 246, 249 (6th Cir. 1986). The burden then shifts to the government to prove

predisposition beyond a reasonable doubt. *Meyer*, 803 F.2d at 249. Viewing the evidence in the light most favorable to the prosecution, Smith failed to show government inducement, thereby relieving the government of the burden of proving predisposition. Smith based his entrapment defense entirely on his own testimony, which the jury could have reasonably rejected as lacking credibility. Moreover, the government presented evidence showing that Smith made initial contact with Slaninka regarding the killing and took substantial steps of his own volition, without Slaninka's involvement, to further the plot. The evidence supports the jury verdict that Smith was not induced to commit this crime and was predisposed to do so.

## II.    POSSESSION OF A FIREARM

Smith contends that the government failed to prove beyond a reasonable doubt that he possessed the .22-caliber handgun found in his home. Because Smith's post-verdict acquittal motion addressed only his entrapment defense, we review Smith's sufficiency of the evidence claim regarding possession for manifest miscarriage of justice. *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998). The jury's finding that Smith possessed the handgun was not a miscarriage of justice. Generally, dominion over the premises where a firearm is found is sufficient to show possession. *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998). The government presented evidence showing that Smith purchased the .22-caliber handgun in 1994 and that officers found it in his bedroom closet. Even if Smith "gave" the gun to his wife, as he claimed at trial and on appeal, the jury still could have found that he possessed it. The jury also could have based its possession finding on the .25-caliber handgun that Smith dropped off to be used to kill Jarvis, an alternative basis not addressed by Smith.

## III.    DENIAL OF COMPETENCY HEARING

Smith contends that the district court erred in denying, without an evidentiary hearing, his motion to determine competency.  A district court's determination of whether there is reasonable cause to believe that the defendant is incompetent is reviewed for abuse of discretion.  *Harper v. Parker*, 177 F.3d 567, 571 (6th Cir. 1999).  On appeal, Smith neither raises new arguments on this matter nor identifies flaws in the district court's factual conclusions, but instead asserts only that the failure to grant a good faith request for a competency hearing was an abuse of discretion.  Smith cites no binding or analogous authority to support such an argument, citing only out-of-circuit cases in which there were substantial facts supporting a finding of reasonable cause or where the district court made legal errors in the analysis.  *See United States v. Ramirez*, 304 F.3d 1033, 1035 (10th Cir. 2002); *United States v. Graves*, 98 F.3d 258, 261-62 (7th Cir. 1996); *United States v. Mason*, 52 F.3d 1286, 1290 (4th Cir. 1995).  Smith, lacking evidence of reasonable cause for the hearing or legal error in the court's analysis, fails to demonstrate that the district court abused its discretion in its competency-hearing denial.

## IV.    SUBPOENA FOR DETENTION HEARING

Smith submitted an ex parte application requesting payment of costs to have Slaninka testify at the detention hearing.  He argues on appeal that if Slaninka had been called to testify at the detention hearing, it would have foreclosed the government's argument at trial that Slaninka was not a government agent for entrapment purposes.  He asserts that this inability to call Slaninka at his detention hearing violated his Sixth Amendment right to call witnesses on his behalf.  Generally, whether a defendant's Sixth Amendment rights have been violated is reviewed de novo.  *See, e.g.*,

No. 04-1749
*United States v. Smith*

*United States v. Stone*, 432 F.3d 651, 654 (6th Cir. 2005).

Although the Sixth Amendment provides that criminal defendants have the right to "compulsory process for obtaining witnesses in his favor," *United States v. Hubbell*, 530 U.S. 27, 54 (2000) (quoting U.S. Const. amend. VI), Smith cites no authority holding that the Sixth Amendment right to compulsory process applies to pretrial detention hearings. Moreover, Smith does not demonstrate how Slaninka's testimony at the detention hearing would have precluded the government from rebutting Smith's entrapment theory at trial. Therefore, Slaninka's absence at Smith's detention hearing did not violate Smith's Sixth Amendment rights.

## V.    QUESTIONING ON PRIOR CONVICTIONS

Smith argues that the prosecutor's questions about his felony conviction as a nineteen-year-old and the prosecutor's reference to that testimony in closing argument were "highly prejudicial."[1] Since Smith made no objection to the question, we review for plain error. *United States v. Oliver*, 397 F.3d 369, 375 (6th Cir. 2005).

Federal Rule of Evidence 608 allows inquiry on cross-examination into specific instances of conduct that relate to the witness's character for truthfulness or untruthfulness. The prosecutor's questioning is admissible based upon Smith's misleading response on his firearm application. Smith argues that, under Michigan law, a felon's civil rights are restored once the felon's sentence is completed. *Hampton v. United States*, 191 F.3d 695, 702-03 (6th Cir. 1999). Therefore, he argues, his 1979 felony is not a bar to his firearms ownership. This argument is nonresponsive. The

_____

[1] In his reply brief, Smith argues that the prosecutor made several other improper statements. We do not address these statements, however, since "[a]n argument first presented to the Court in a reply brief is waived." *Abboud*, 438 F.3d at 589.

-7-

relevant application form asked whether Smith had ever been convicted of a felony, not whether he was currently a felon who could not possess a firearm. Smith's "no" answer was, at best, misleading. The prosecutor's reference to the answer in rebuttal argument was not improper.

## VI.    SENTENCING

Smith argues that the district court erred under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), by imposing a sentence that was greater than the statutory maximum for his murder for hire conviction. Smith mistakenly assumes that the 120-month statutory maximum for his murder for hire conviction (Count I) bars the district court from stacking two sixty-month sentences for possessing a firearm with a removed serial number (Count III) and in furtherance of a crime of violence (Count IV) onto his murder-for-hire sentence. The district court permissibly exercised its discretion in imposing a consecutive sentence for possessing a firearm with a removed serial number, 18 U.S.C. § 3584(a), and was statutorily required to impose a consecutive sentence for possessing a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A). Under USSG 5G1.2(d), the district court had authority to stack the sentences on Counts I (120 months) and III (60 months) since the combined total did not exceed the maximum Guidelines sentence (188 months). Following the statutorily mandated addition of sixty months for Count IV, the district court properly arrived at a total sentence of 240 months. *See* 18 U.S.C. § 924(c)(1)(A).

Nonetheless, we must vacate the sentence based upon the district court's treatment of the Guidelines as mandatory. When a district court sentences a defendant under a mandatory Guidelines scheme, plain error is presumed if there is not "clear and specific evidence" in the trial record that the district court would have imposed the same sentence under an advisory Guidelines regime.

*United States v. Barnett*, 398 F.3d 516, 529 (6th Cir. 2005), *cert. dismissed*, ___ U.S. ___, 126 S. Ct. 33 (2005).  We vacate Smith's sentence and remand to the district court for resentencing consistent with *United States v. Booker*, 543 U.S. 220 (2005)*,* and this court's post-*Booker* precedents.

## CONCLUSION

We **AFFIRM** Smith's convictions but **VACATE** his sentence and **REMAND** for resentencing.