SUTTON, Circuit Judge.
Kevin Smith challenges his 240-month prison sentence, imposed for hiring a hit man to murder his ex-wife, among other misdeeds. Because the sentencing court imposed a procedurally reasonable sentence and because Smith’s requested subpoenas would not have bolstered his sentencing arguments, we affirm.
I.
Smith’s 1995 divorce with Monica Jarvis did not go well. For years, they fought over the custody of their three children. In March 2003, the custody battle took an unfortunate turn when Smith asked his half-nephew Michael Slaninka to find someone to murder Jarvis. At the time, Smith knew that Slaninka had been arrested on federal explosives charges five months earlier, but he did not know that Slaninka had agreed to serve as a confidential informant as part of his plea deal with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).
A little bit of knowledge is dangerous. Slaninka told ATF agents about Smith’s intent to hire a hit man. The agents showed Slaninka how to record all future conversations with Smith and helped him perpetuate the conspiracy to murder Smith’s ex-wife. As events unfolded, Slaninka played the part of the middleman, telling Smith that Kent West, an ATF special agent, would be the assassin. Smith eventually agreed to pay West $2,000 for the murder and mailed him a hand-drawn map of Jarvis’s residence, photos of Jarvis and $1,000 in cash. Smith also promised to provide West with a firearm.
On July 22, 2003, ATF agents arrested Smith after he dropped off a .25 caliber handgun for West at a predetermined location. The agents also executed a search warrant at Smith’s home, where they found a .22 caliber pistol. A federal grand jury indicted Smith on four counts: (1) murder for hire; (2) being a felon in possession of a firearm; (3) possession of a firearm with its serial number removed; and (4) possession of a firearm in furtherance of a crime of violence.
At the trial, Smith acknowledged his participation in the murder-for-hire scheme. But he claimed that the government entrapped him, as he never would have taken part in the scheme but for Slaninka’s encouragement. According to Smith, in the months between Slaninka’s November 2002 arrest and Smith’s March 2003 murder-for-hire proposal, Slaninka frequently made caustic comments about *637 Jarvis to Smith, including that she was “ruinfing] these kids,” Tr. Ill at 57, and that Smith “ought to just kill [Jarvis].” Tr. Ill at 51. It was Slaninka, Smith claims, who first said that he knew a “professional” who “could take care of [Smith’s] problem.” Tr. Ill at 56.
The jury rejected Smith’s entrapment defense and convicted him on all four counts. At sentencing, the court imposed a two-level obstruction-of-justice enhancement because Smith perjured himself when he testified (1) that he did not know that the bag provided to West contained a firearm and (2) that the pistol found in his bedroom closet did not belong to him. The judge imposed a 240-month sentence.
Smith appealed, and we affirmed his convictions. See United States v. Smith, 191 Fed.Appx. 383 (6th Cir.2006). “Smith,” we reasoned, “based his entrapment defense entirely on his own testimony, which the jury could have reasonably rejected as lacking credibility.” Id. at 387. We vacated his sentence in light of the Supreme Court’s then-recent decision in United States v. Booker, 543 U.S. 220, 268, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and remanded the case for resentencing.
Before the second sentencing hearing, the district court denied Smith’s motion to subpoena records of telephone calls between him and Slaninka from September 2002 to July 2003. See Fed.R.Crim.P. 17(b). At the hearing, the court rejected (1) Smith’s “imperfect entrapment” argument in favor of leniency, (2) his challenges to the original sentencing comb’s obstruction-of-justice enhancement and (3) his challenges to the prior “stacking” of consecutive sentences. The court again imposed a 240-month sentence.
II.
A.
Smith first claims that the court imposed a procedurally unreasonable sentence. That problem arises when a sentencing court “fail[s] to calculate (or improperly calculates]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the [18 U.S.C.] § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence.” Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). We review such challenges for an abuse of discretion. Id.
Smith argues that the district court (1) failed to rule on his objections to the presentence report, (2) mistook his “imperfect entrapment” argument for a reiteration of his trial defense and (3) “presumed that a guideline sentence is reasonable.” Smith’s Br. at 28. He is wrong on each front.
First, the court adequately considered Smith’s claim that the government did not identify sufficient conduct to trigger an obstruction-of-justice sentencing enhancement. See USSG § 3C1.1. At Smith’s original sentencing hearing, the judge pointed to parts of Smith’s testimony that were “preposterous” and “clearly ... perjurious.” Sent. Tr. Ill at 12-13. At resentencing, the court acknowledged that “the trial judge was closer to” the issue than he was — another judge having handled the trial and initial sentencing— and thus deferred to the first judge’s perjury finding. Resent. Tr. at 22. This reference to the original judge’s findings, and the court’s understandable deference to the original judge’s findings, satisfied the court’s obligation to explain its “basis for rejecting” Smith’s arguments. United States v. Richardson, 437 F.3d 550, 554 (6th Cir.2006).
The record also shows that the court considered and rejected Smith’s objection to the “stacking” of consecutive sentences onto his murder-for-hire sentence. The guidelines call for a range of *638 151 to 188 months on the murder-for-hire conviction, and the statute caps the sentence at 120 months. See 18 U.S.C. § 1958(a); USSG § 5G1.1. At resentencing, as at the first sentencing hearing, the district court imposed the maximum 120-month sentence, plus a concurrent 120-month sentence for being a felon in possession of a firearm and two consecutive 60-month sentences for the remaining firearm convictions, resulting in a total prison sentence of 240 months. The court noted that the Sixth Circuit had approved the same consecutive sentences on Smith’s first appeal, see Smith, 191 Fed.Appx. at 388-89, an issue left untouched by Booker, see Oregon v. Ice, — U.S. ---, 129 S.Ct. 711, 716-18,172 L.Ed.2d 517 (2009), and appropriately declined to revisit Smith’s objection, Resent. Tr. at 4. The court had ample discretion to take this path. See United States v. Haynes, 468 F.3d 422, 426 (6th Cir.2006).
Second, Smith claims that the court “refused to evaluate” his “imperfect entrapment” argument — namely that, even if the government’s encouragement did not rise to the level of culpability-removing entrapment, it amounted to a culpability-mitigating factor that the court should have considered. Smith’s Br. at 38. “Imperfect entrapment” was itself an imperfect theory of sentencing mitigation at its conception, and it has become more imperfect since. The theory derives from a preBooker line of Ninth Circuit cases, which increased the flexibility of district court judges to grant downward departures. Defendants, that court held, “who are predisposed [to commit a crime] but who are then pressured unduly by the government to go forward with the offense” may “receive a downward departure based on imperfect entrapment.” United States v. McClelland, 72 F.3d 717, 724-25 (9th Cir. 1995); see also United States v. Bala, 236 F.3d 87, 92 (2d Cir.2000).
Before Booker, this circuit never embraced imperfect entrapment as an independent ground for obtaining a downward departure. And since Booker, it is difficult to see the necessity of adopting the doctrine, as the same not-quite-entrapment factors that a defendant could invoke as a basis for a downward departure could readily be swept up by the general § 3553(a) mitigating factors — particularly the “nature and circumstances” of the offense — in the course of deciding whether to grant a downward variance. Cf. United States v. Guest, 564 F.3d 777, 781 (6th Cir.2009) (reasoning that the Booker line of cases does not require the Sixth Circuit to reevaluate its rejection of the related “sentencing entrapment” theory of departure).
Be that as it may, we need not take a final stand on the issue today. Whatever the status of imperfect entrapment as a theory of sentencing mitigation, Smith is wrong to say that the trial court refused to consider it. At the resentencing hearing, the court addressed Smith’s imperfect-entrapment claim and distinguished his sentencing and trial arguments:
[Mitigation issues ... are always available for the defendant to indicate that he was under some kind of influence of some kind or was incapable of fully comprehending all he was doing. That’s always available to the Court.
Resent. Tr. at 7. The court then added that “[t]he character and mind-set of the defendant, predisposed or otherwise, at the time he committed the offense is open for discussion by this Court,” thereby drawing a line between “mitigation of the offense,” which the jury verdict covered, and “mitigation by the individual,” which the sentencing hearing would cover. Id. at 8. The trial court had no reason separately to talk about “mitigation by the individual” at sentencing — and whether Smith *639 “was under some kind of influence” or otherwise “was incapable of fully comprehending all he was doing” — if it was only considering whether Smith’s theory of entrapment excused the crime, as opposed to providing a reason for a lower sentence. The court then separately evaluated Smith’s mitigation argument in the course of applying the § 3553(a) factors. Because Smith’s entrapment argument at sentencing relied solely on his testimony, the perjury finding of the trial judge, together with the jury’s rejection of Smith’s underlying entrapment defense, made this sentencing argument an uphill fight. Add to these considerations the reality that Slaninka and West offered Smith several opportunities, never accepted, to back out of the plan, and it becomes clear that the district court reasonably rejected this argument and had ample bases for doing so.
Third, Smith targets the district court’s statement that “there is a presumption of reasonableness as a matter of law that goes with a guideline sentence.” Resent. Tr. at 20. The “presumption of reasonableness,” it is true, applies only on appellate review, not at sentencing. Nelson v. United States, — U.S. ---, 129 S.Ct. 890, 891-92, 172 L.Ed.2d 719 (2009); see Gall, 552 U.S. at 50, 128 S.Ct. 586. And sentencing courts, it is also true, must treat the Guidelines as a “starting point and the initial benchmark” before “mak[ing] an individualized assessment based on the facts presented” under the § 3553(a) factors. Gall, 552 U.S. at 49-50, 128 S.Ct. 586. But that is exactly what the district court did — ultimately, that is. Immediately after making its infelicitous “presumption of reasonableness” comment, the court said, “By that I mean this. It is a starting-off point for the Court’s consideration of a sentence sufficient, but not greater than necessary[,] to comply with the sentencing statute of 3553(a).” Resent. Tr. at 20-21. The court then proceeded to weigh the parties’ arguments for a variance from the Guidelines just as Rita, Gall and the rest of the Court’s cases require.
The Supreme Court, it bears adding, did not decide Rita v. United States, 551 U.S. 338, 347, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007), which established that the “presumption of reasonableness” applies only to appellate review, until June 21, 2007— six months after Smith’s December 21, 2006 resentencing hearing. Before Rita, the Sixth Circuit had held that district courts “did not err in viewing the Guidelines as ... presumptively reasonable,” United States v. Cage, 458 F.3d 537, 543 (6th Cir.2006), and indeed the district court in this case relied on one of those pre-Rita cases in mentioning the presumption during the sentencing hearing, see Resent. Tr. at 20 (“recognizing] under United States v. Williams [436 F.3d 706, 708 (6th Cir.2006)] that there is a presumption of reasonableness ... that goes with a guideline sentence”). One can imagine therefore why the district court might make such a remark. What matters here, however, is that no matter what the court (initially) said, what it (eventually) did was entirely consistent with Gall and Nelson. Smith’s sentence was procedurally reasonable.
B.
Smith next argues that the district court should have granted his subpoena request. Rule 17(b) says that district courts should subpoena evidence at an indigent defendant’s request if the evidence is “necessary] ... for an adequate defense.” Fed.R.Crim.P. 17(b). We review a district court’s denial of a Rule 17(b) motion for abuse of discretion, see United States v. Sprouse, 472 F.2d 1167, 1168 (6th Cir.1973), and will reverse only under “exceptional circumstances,” United States v. Moore, 917 F.2d 215, 230 (6th Cir.1990).
*640 The district court did not exceed its discretion in rejecting this subpoena request. The phone records would not have revealed the contents of the conversations. They would have shown only the number of calls to and from a given phone number. The main purpose of the records — to corroborate Smith’s account that Slaninka began to contact Smith frequently after Slaninka’s November 2002 arrest — had already been established by other evidence. Slaninka testified that he and Smith spoke “once a week, sometimes more, sometimes less” in the period leading up to Smith’s murder-for-hire proposal and that those conversations often revolved around family and Smith’s ongoing custody dispute. Later recordings show that Smith and Slaninka spoke more often after ATF entered the picture. Not just the pre-existing evidence, but the government’s concession as well, show that Smith and Slaninka telephoned each other frequently after Slaninka’s arrest. And even if the records revealed that “Slaninka initiated a large number of calls” only after his ATF arrest, R.100 ¶ 3, the frequency of the calls sheds no new light on Smith’s core allegation — that “Slaninka frequently reported to Smith that Monica Jarvis (the victim) was mistreating Kevin Smith’s children and that Slaninka knew a hit man who could kill Monica Jarvis,” id. ¶ 4.
That the district court did not mention “necessity” in denying Smith’s motion does not change things. In an abuse-of-diseretion setting, we generally will “enforce a district court’s orders if [the] grounds for doing so are apparent from the record before us.” Wausau Underwriters Ins. Co. v. Vulcan Development, Inc., 323 F.3d 396, 403-04 (6th Cir.2003). That is readily so here.
III.
For these reasons, we affirm.