NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0753n.06

No. 09-1588

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Dec 10, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | ON APPEAL FROM THE |
| v. | : | UNITED STATES DISTRICT COURT |
| | : | FOR THE EASTERN DISTRICT OF |
| AMIR KARIM BEIGALI, | : | MICHIGAN |
| | : | |
| Defendant-Appellant. | : | |

**BEFORE: SUTTON and GRIFFIN, Circuit Judges; BERTELSMAN, District Judge.**[*]

**OPINION**

**PER CURIAM:**

Defendant-Appellant, Amir Karim Beigali, appeals the district court's dismissal without prejudice of an indictment against him, alleging violations of the Speedy Trial Act and the Fifth and Sixth Amendments. Beigali contends that the dismissal should have been with prejudice.

Beigali, who was re-indicted and convicted of attempted possession of cocaine with intent to distribute and use of a firearm in relation to that offense, also appeals the district court's refusal to grant a downward departure based on alleged sentencing manipulation and entrapment.

We AFFIRM.

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## *FACTUAL AND PROCEDURAL BACKGROUND*

### A.  Events Leading to Beigali's Arrest

The Drug Enforcement Agency ("DEA") received information from an informant regarding illegal drug activity involving Beigali.  The informant apprised the DEA that Beigali, while in prison serving time for armed robbery, had approached a fellow inmate expressing interest in making a lot of money by selling drugs.  Beigali was released from prison in March 2003, after which he began corresponding with his former fellow inmate regarding his desire to pursue a drug business.

In September 2005, the DEA contacted Walter Ramirez, a confidential informant, and directed him to place a recorded telephone call to Beigali.  Ramirez called Beigali on September 27, 2005, representing himself to be a cousin of Beigali's fellow inmate and a distributor of cocaine with several kilograms to sell.  Beigali expressed an interest in purchasing several kilograms of cocaine, but he told Ramirez he had only $10,000.  Ramirez told Beigali that was not enough money for even one kilogram of cocaine.

Two days later, Beigali, who was then on supervised release in Florida, flew from his home in Orlando to Detroit, Michigan to meet with Ramirez.  While under DEA surveillance, Ramirez picked Beigali up from the airport and drove to a restaurant, where the two men discussed a cocaine purchase.  The men then drove to a hotel where Beigali had rented a room.  Beigali told Ramirez that he could sell multiple kilograms of cocaine in Orlando, and Ramirez told him that additional kilograms could be "fronted" if an initial transaction went smoothly.  Beigali agreed that he would contact Ramirez after he obtained enough money to buy the cocaine.  These conversations were all recorded.  Beigali then returned to Florida.

Beigali spoke with Ramirez three times in early October 2005. Beigali still did not have enough money to purchase the cocaine which, at that time, had a street value of approximately $18,000 to $20,000 per kilogram. At the suggestion of a DEA agent, Ramirez told Beigali that he might be willing to sell the cocaine in exchange for a combination of cash and guns.

Beigali told Ramirez that he could provide two nine-millimeter handguns, an AK-47 assault rifle, and $10,000 in cash. The men agreed that Beigali would travel to Michigan to pick up five kilograms of cocaine, one paid for by the cash and guns, and four "fronted" to Beigali on consignment. Beigali and a third person would then travel back to Florida where Beigali would sell the cocaine and give the third person money for the additional four kilograms, which the third person would then return to Ramirez in Michigan.

On November 16, 2005, Beigali called Ramirez while en route to Michigan, and the men agreed to meet the following day. Ramirez told Beigali to stay at the same hotel where he had stayed on his previous trip to Detroit.

On November 17, 2005, DEA agents followed Beigali from his hotel to a restaurant in Dearborn, Michigan where he met Ramirez. In a recorded conversation, the men discussed details of the drug transaction. Ramirez accepted the three guns and $10,000 cash for one kilogram of the cocaine and told Beigali that he would owe Ramirez money for the other four kilograms. The men went out to the parking lot to complete the transaction, where DEA agents arrested Beigali. The agents found $10,000 cash and the fully-loaded weapons in the trunk of Beigali's vehicle.

**B.     Proceedings in the District Court**

**1.     Preindictment Proceedings**

On November 18, 2005, the government filed a one-count complaint charging Beigali with attempted possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). [R. 1]  A public defender was appointed for Beigali [R. 2], and, on November 21, 2005, Beigali consented to detention pending trial.  [R. 4]

On January 30, 2007, Beigali's public defender moved to withdraw.  [R. 7]  Counsel stated that, although she had been working with the government to reach a plea agreement, the delay in reaching such an agreement had caused a breakdown in her relationship with Beigali, who had asked that she be removed. [*Id.*]  The District Court granted the motion to withdraw and appointed new counsel on February 12, 2007.  [R. 8]

On August 8, 2007, Beigali's second appointed counsel moved to withdraw on the grounds that Beigali was dissatisfied with his representation and wanted to represent himself.  [R. 9]  The court held a motion hearing on September 27, 2007, during which counsel for the government informed the court of the government's efforts to negotiate a plea agreement with both of Beigali's appointed counsel.  [R. 33 at 4-5]  Beigali's second counsel likewise told the court of his attempts to negotiate a plea deal on Beigali's behalf, which he believed to be in his client's best interest.  [*Id.* at 18]  In this regard, the court noted that, while the complaint charged only the drug offense, Beigali was also facing a weapons charge which carried an additional mandatory twenty-five year prison sentence, leading to a potential sentence in excess of forty-five years.  [*Id.* at 9, 19-20]

Following this hearing, the District Court granted Beigali's motion to represent himself and, on October 4, 2007, it granted counsel's motion to withdraw. [R. 13]

### 2. Indictment and Trial

On October 4, 2007, nearly two years after the filing of the complaint, the first indictment against Beigali in this proceeding was filed. [R. 14] The indictment charged Beigali with two counts: (1) attempt to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) use of a firearm during and in relation to a drug offense in violation of 18 U.S.C. § 924(c). [*Id.*]

Beigali pled not guilty to these charges, consented to detention, and the District Court again appointed counsel on October 11, 2007. [R. 17]

On February 4, 2008, Beigali's counsel filed a motion to dismiss the indictment with prejudice based on pre-trial delay in violation of the Speedy Trial Act, 18 U.S.C. §§ 3161 et seq., the Fifth Amendment, and the Sixth Amendment. [R. 22]

On April 30, 2008, the District Court issued an Opinion and Order dismissing the indictment without prejudice. [R. 29] The court concluded that, while Beigali's rights under the Speedy Trial Act had indeed been violated, requiring dismissal of the indictment, the dismissal should be without prejudice under the factors set forth in 18 U.S.C. § 3162(a)(1). [*Id.* at 4] The court further concluded that Beigali had shown no violation of his rights under the Fifth and Sixth Amendments. [*Id.* at 6-7]

On May 7, 2008, the grand jury returned a superseding indictment charging Beigali with the same two counts contained in the original indictment. [R. 30]     Although Beigali attempted to establish an entrapment defense, on August 21, 2008, the jury convicted him on both counts.

### 3.     Sentencing

On November 17, 2008, Beigali filed a sentencing memorandum in which he objected to the amount of drugs used to compute his base offense level, arguing that the government had artificially increased the drug amount by having the confidential source offer a lower price for the cocaine and agree to accept guns as payment, thereby resulting in "sentencing entrapment." [R. 39] Beigali argued that the court should thus depart downward from the sentencing guidelines range. [*Id.* at 3]

The district court held Beigali's sentencing hearing on April 14, 2009, and it issued its Sentencing Opinion the next day. [R. 44] The court found persuasive Beigali's argument that the guideline range for Count I should be computed based only on the one kilogram of cocaine which Beigali had the actual means to purchase at the time of his offense, and not on the additional four kilograms that Beigali aspired to purchase after the "trial run." [*Id.* at 6-7][1]

Although this reduction in the drug amount resulted in a lower guideline range, the court found the recalculation immaterial to Beigali's sentence because the drug offense for which Beigali was convicted carries a mandatory minimum sentence of ten years. [*Id.* at 8] The court also found

---

[1]The government contends that the District Court based this conclusion on a clearly erroneous finding of fact, although it did not appeal that finding. (Brief for the United States at 25) n. 5) The government argues that the record reveals that Beigali in fact purchased the full five kilograms of cocaine, one for which he paid up front, and four on consignment. Given the statutory minimum applicable to the drug charge, any discrepancy on this issue is immaterial.

that neither of the two criteria under which a court may depart downward from a statutory minimum was present.[2] [*Id.* at 8-9]

As to Count II, the court found unpersuasive Beigali's argument that the court should depart downward because inclusion of guns in the drug transaction was first suggested by the government's confidential informant rather than Beigali. [*Id.* at 8]

After consideration of the 18 U.S.C. § 3553(a) factors, the court sentenced Beigali to the statutory minimum of 120 months on Count I and 25 years on Count II, to run consecutively. [*Id.* at 11]

Beigali filed a timely notice of appeal on April 23, 2009. [R. 46]

## *ANALYSIS*

### A. <u>Speedy Trial Act</u>

This court reviews for an abuse of discretion a district court's decision to dismiss an indictment without prejudice, rather than with prejudice, pursuant to the Speedy Trial Act. *See United States v.* Taylor, 487 U.S. 326, 332 (1988); *United States v. Perez*, 306 Fed. App'x 929, 934 (6th Cir. 2009); *United States v. Robinson*, 389 F.3d 582, 589 (6th Cir. 2004).

The Speedy Trial Act requires, among other things, that an indictment charging an individual with the commission of an offense be filed within thirty days from the date that the defendant was

---

[2] 18 U.S.C. §§ 3553(e) and (f) permit a district court to impose a sentence below a statutory minimum only if: (1) the government so moves based on the defendant's substantial assistance to the government, or (2) the defendant meets certain "safety valve" criteria, including having no more than one criminal history point. Neither exception applied to Beigali.

arrested or served with a summons in connection with such charges. 18 U.S.C. § 3161(b). Where an indictment is not timely filed, the Act mandates its dismissal. 18 U.S.C. § 3162(a)(1).

"Although the Speedy Trial Act does not specify whether dismissal should be with or without prejudice and does not contain a default presumption one way or the other, it does provide three factors for a court to consider when making this determination." *Perez*, 306 Fed. App'x at 932 (citation and internal quotations omitted). The Act directs the district court to consider: (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a reprosecution on the administration of this chapter and on the administration of justice. 18 U.S.C. § 3162(a)(1).

"Where, as here, Congress has declared that a decision will be governed by consideration of particular factors, a district court must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review." *Taylor*, 487 U.S. at 336. "[W]hen the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not be lightly disturbed." *Id.* at 337.

Here, the district court properly considered each of these statutory factors and explained its reasoning for concluding that the indictment against Beigali should be dismissed without prejudice.[3]

---

[3]This analysis applies only to the dismissal without prejudice of the drug charge, as a speedy trial violation requires dismissal only of the offenses charged in the original complaint. *See United States v. Turner*, 602 F.3d 778, 786 (6th Cir. 2010) (citations omitted). The weapons offense of which Beigali was ultimately convicted was not charged in the original complaint and is thus not affected by the speedy trial violation.

[R. 29 at 4-6]  The court first noted that the drug offense with which Beigali was charged is

"undeniably serious," and that this factor weighed heavily in favor of dismissal without prejudice.

[*Id.* at 4-5]  This conclusion is consistent with decisions of this court finding similar drug charges

to be serious ones weighing in favor of dismissal without prejudice.  *See Perez*, 306 Fed. App'x at

933.

Further, the length of Beigali's ultimate sentence – 420 months – is also indicative of the

seriousness of his offenses and also favors dismissal without prejudice.  *See Robinson*, 389 F.3d at

588 (concluding that sentence of 44½ years reflects seriousness of offense).

Beigali's sole argument against the seriousness of his offense is essentially the same as the

entrapment defense he presented at trial: that the felony charges were "wholly created and facilitated

by the government."  [Brief of the Defendant-Appellant at 18]

This argument puts the cart before the horse.  The statute directs the trial court to consider

the seriousness of the offense with which the defendant is *charged*.  18 U.S.C. § 3162(a)(2).  While

a criminal defendant may assert numerous defenses at trial, the statute does not require the court to

consider possible defenses in determining whether the seriousness of the charged offense warrants

dismissal of the indictment with or without prejudice.[4]

The district court next considered the facts and circumstances which led to the delayed

indictment.  [R. 29 at 5]  The court noted that at least some of the delay was attributable to Beigali's

two requests that he be appointed new counsel, and that some of the delay had been "for Defendant's

---

[4]Indeed, the question of entrapment is generally one for the jury, rather than for the court. *United States v. Schaffer*, 586 F.3d 414, 426 (6th Cir. 2009) (citation omitted).

benefit." [*Id.* at 5] Beigali argues that the district court failed to state any reasons for this latter conclusion. [Brief of the Defendant-Appellant at 22] Beigali's argument is belied by the record as a whole.

Although the district court's written opinion does not explain why much of the delay between the filing of the complaint and the indictment was for Beigali's benefit, it is clear from the transcript of the motion hearing that the court was alluding to the fact that each of Beigali's appointed counsel had attempted to negotiate a plea agreement on his behalf with the government. Beigali's second counsel informed the court that he believed a plea would have been in Beigali's best interest given that he was facing a second charge which carried a mandatory minimum sentence of imprisonment of twenty-five years, to run consecutively with any other sentence. [R. 33 at 9, 18-20]

In other words, the protracted plea negotiations were undertaken by Beigali's counsel in an effort to help him avoid what did, in fact, ultimately transpire: a conviction coupled with a mandatory sentence of several decades in prison. Beigali does not contest the accuracy of this factual finding.

We thus conclude that the district court did not abuse its discretion in determining that this fact, coupled with the absence of evidence of bad faith on the part of the government, also weighed in favor of dismissal of the indictment without prejudice. *See United States v. Pierce*, 17 F.3d 146, 149 (6th Cir. 1994) ("Where there is no affirmative misconduct by either party, the court's conclusion that this second factor authorizes dismissal with or without prejudice is a matter within its discretion.") (citation omitted).

Finally, the district court considered the impact of reprosecution on the administration of justice. [*Id.* at 5-6] The court concluded that, because the government's evidence consisted primarily of audio recordings[5] of Beigali engaged in conversations regarding the drug transaction, Beigali was not prejudiced by any loss of evidence caused by the delay. The court further noted that there was no evidence that the government had engaged in misconduct or gained any unfair advantage as a result of the delay. This court has agreed that such factors weigh in favor of dismissal of the indictment without prejudice. *Pierce*, 17 F.3d at 149.

While Beigali argues that the delay caused a deterioration in the memory of the confidential informant, the trial testimony he cites appears immaterial given the nature of the government's evidence. Likewise, the informant's inability to remember specific dates did not impair Beigali's ability to argue that he was not predisposed to commit the crimes at issue and that he was entrapped by the government agents.

Equally unpersuasive is Beigali's argument that the district court erred in failing to consider the impact of his pre-indictment incarceration. It is undisputed that Beigali consented to detention pending trial. [R. 4] Moreover, as the government notes, had Beigali not been detained in Michigan, he would have been transferred to Florida where he was facing a supervised release violation. It is unlikely, then, that incarceration in Michigan resulted in any additional restrictions on Beigali's liberty. *See United States v.* Taylor, 487 U.S. 326, 341 (1988). And, preparing for his federal trial

---

[5]The parties agree that the district court mistakenly referred to the surveillance tapes as video, rather than audio, recordings.

in Michigan while in Florida, with appointed Michigan counsel, would undoubtedly have been more difficult for Beigali.

In sum, the district court properly considered the pertinent statutory factors and acted within its discretion by dismissing the indictment without prejudice.

B.      **Fifth and Sixth Amendments**

Beigali also asserts that the district court erred in rejecting his claim that the preindictment delay in this case violated his rights under the Fifth and Sixth Amendments to the United States Constitution.  We find no such error.

While the statutes of limitations provide the primary guarantee against the prosecution of stale criminal charges, "the Due Process Clause of the Fifth Amendment also plays a 'limited role' in protecting against excessive preindictment delay." *United States v. Brown*, 959 F.2d 63, 65 (6th Cir. 1992) (quoting *United States v. Lovasco*, 431 U.S. 783, 789 (1977)).  Dismissal for preindictment delay under the Fifth Amendment is warranted only where the defendant shows (1) substantial prejudice to his right to a fair trial, and (2) that the delay was an intentional device by the government to gain a tactical advantage.  *Id.* at 66 (citations omitted).  A defendant's Fifth Amendment due process rights are generally not implicated where the government offers a valid reason for the delay. *Id.* (citation omitted).  *See also United States v. Schaffer*, 586 F.3d 414, 425-26 (6th Cir. 2009) (noting that the burden is on the defendant to show that government had no valid reason for preindictment delay and that the delay was an intentional device to gain a tactical advantage).

Beigali fails to make any showing that the government's delay in indicting him was a deliberate device intended to afford it a tactical advantage in his prosecution. For this reason alone, his Fifth Amendment claim fails. *Schaffer*, 586 F.3d at 426. Further, the ongoing effort by the government to reach a plea agreement with Beigali's counsel before filing an indictment that included the weapons charge constitutes a valid reason for the delay.

Beigali also asserts a Sixth Amendment claim. This court reviews de novo the constitutional question of whether a defendant's Sixth Amendment right to a speedy trial has been violated, but the district court's factual findings are reviewed for clear error. *United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999) (citation omitted).

Conceptually similar to the Speedy Trial Act claim, a Sixth Amendment claim alleging improper delay requires the court to engage in a balancing test by considering at least the following four factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The burden is on the prosecution to explain the cause of the pretrial delay. *Id.* at 349 (citation omitted).

Our balancing of these factors leads us to conclude that no violation of Beigali's Sixth Amendment right occurred. First, while the delay in this case was not insubstantial, it was, as the district court noted, "significantly shorter than the five-year statute of limitations for the offenses charged." [R. 29 at 7] Second, the government has given a valid reason for the delay, which was confirmed by Beigali's counsel: ongoing efforts to strike a plea deal which would enable Beigali to avoid prosecution for a weapons charge that carried a hefty mandatory minimum prison sentence.

13

Third, even assuming that Beigali pressed his counsel to move his case forward, he has shown no actual prejudice from the delay herein. This factor is much like the Speedy Trial Act prejudice analysis which, for the reasons already stated, demonstrates that no material prejudice to Beigali's defense resulted from the delay.

We therefore find that the district court properly rejected Beigali's Sixth Amendment claim.

## C.      Sentencing Manipulation

The final issue raised by Beigali in this appeal pertains to his sentence. He argues that the district court erred by denying his request for a downward departure from the guidelines due to the government's conduct, through the confidential informant, in increasing the quantity of drugs involved in the transaction and by suggesting the use of weapons as a means of partial payment.

First, of course, there is the question of whether we may even review the district court's denial of a downward departure. *See United States v. Lebreux*, Nos. 06-4448, 06-4615, 07-3271, 07-3272, 2009 WL 87505, at *2 (6th Cir. Jan. 13, 2009) (noting that appellate court cannot review denial of downward departure unless trial court improperly computed guidelines, was unaware of its discretion to depart downward, or imposed the sentence in violation of the law or as a result of an incorrect application of the guidelines) (quoting *United States v. May*, 399 F.3d 817, 827 (6th Cir. 2005)). None of those factors present themselves here.

In any event, the "Sixth Circuit has already addressed sentencing entrapment and sentence manipulation after *Gall* [*v. United States*, 552 U.S. 38 (2007)] and reaffirmed that the Sixth Circuit does not recognize either defense." *United States v. Guest*, 564 F.3d 777, 781 (6th Cir. 2009) (citation omitted). *See also United States v. Smith*, 358 Fed. App'x 634, 638 (6th Cir. 2009)

14

("'Imperfect entrapment' was itself an imperfect theory of sentencing mitigation at its conception, and it has become more imperfect since.").

"Whatever the status of imperfect entrapment as a theory of sentencing mitigation, [Beigali] is wrong to say that the trial court refused to consider it." *Smith*, 358 Fed. App'x at 638. Indeed, the court agreed with Beigali's argument as to Count I and rejected the recommendation by the United States Probation Office that Beigali's base offense level be computed using the full five kilograms of cocaine, rather than the one kilogram which he then had the actual means to purchase. [R. 44 at 7] This was a hollow victory for Beigali, however, because the district court was constrained by the statutory minimum to sentence him to no fewer than ten years for that offense. [R. 44 at 8-9] *See United States v. Burke*, 237 F.3d 741, 745 (6th Cir. 2001) (absent exceptions not present here, district court has no discretion to depart downward from statutory minimum).

Finally, we find no error in the district court's conclusion that Beigali's sentencing entrapment argument was unpersuasive as to the weapons charge, on which the court likewise sentenced Beigali to the mandatory statutory minimum.

Affirmed.