91 F.3d 145
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles R. MILLER, Jr., Defendant-Appellant.
 No. 95-5298.
 United States Court of Appeals, Sixth Circuit.
 July 29, 1996.
 
 Before: NORRIS and SUHRHEINRICH, Circuit Judges; WELLS, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Charles R. Miller, Jr., challenges his conviction for various counts related to bank fraud. After careful consideration of both the record and the arguments advanced by defendant, we conclude that his contentions of error are misplaced. We therefore affirm both his conviction and his sentence.
 
 I.
 
 2
 The issues raised in this appeal do not require a recitation of the facts. In the few instances where background information is necessary, it will be supplied in the context of our discussion of the legal issue.
 
 1. Pre-Indictment Delay
 
 3
 Defendant first contends that his Fifth Amendment right to due process was compromised by the seven years that elapsed between the commission of the alleged crimes and the return of the indictment.
 
 
 4
 The Supreme Court has recognized that the Due Process Clause of the Fifth Amendment plays but a limited role in protecting against pre-indictment delay. United States v. Lovasco, 431 U.S. 783, 789 (1977). This circuit has read Lovasco to require a two-part showing by a defendant alleging that such a delay adversely affected his right to due process. First, the delay must have caused substantial prejudice to his right to a fair trial. Second, he must demonstrate that the government intentionally used the delay to gain a tactical advantage. United States v. Brown, 959 F.2d 63, 66 (6th Cir.1992).
 
 
 5
 Defendant recognizes that his burden is substantial and therefore urges us to modify the second prong of the Brown test to include negligent conduct on the part of the government in bringing an indictment. See United States v. Copley, 774 F.2d 728, 730 n. 2 (6th Cir.1985) (dictum), cert. denied, 475 U.S. 1049 (1986). Defendant's argument is unpersuasive. As the Court recognized in Lovasco, encouraging a rush to indictment would have the deleterious effect of increasing the likelihood of unwarranted charges being filed and would add to the time during which defendants stand accused but untried. 431 U.S. at 791. Moreover, such a requirement would make it overly difficult for prosecutors to develop cases, such as the one now before us, that involve more than one participant. 431 U.S. at 792-93. Thus, both the government and innocent defendants stand to lose substantially if the prosecution feels that it must seek an indictment at the first opportunity or risk having the charges dismissed as stale. As Lovasco makes clear, the applicable statutes of limitation remain a defendant's primary protection against pre-indictment delay. 431 U.S. at 789.
 
 
 6
 Miller maintains that he suffered actual prejudice due to a fading memory, a missing witness, loss of crucial documents, and deposition testimony that he gave in the interim. As we have previously observed, dimming memory alone is insufficient to establish prejudice. See United States v. Duncan, 763 F.2d 220, 222 (6th Cir.1985). Moreover, the district court, which had an opportunity to observe defendant's testimony, found that "the memory of witnesses was not materially impaired."
 
 
 7
 As for the missing documents and absent witness, defendant has failed to show how their absence prejudiced his cause. Not only do they go to tangential issues, it appears from the record that the relevant information could have been established by other means.
 
 
 8
 Finally, though we need not reach the second prong of the Brown test, we note that defendant has not even alleged that the government engaged in use of the pre-indictment delay for tactical reasons, which is presumably why he urged this court to adopt the less onerous negligence standard.
 
 
 9
 In sum, we hold that defendant has failed to establish either prejudice or impermissible motive on the part of the government and thus failed to make out a viable due process claim.
 
 2. Admissibility of an Audiotape
 
 10
 Defendant next takes issue with the district court's decision to admit into evidence a tape recording made by John Meatte, an indicted co-conspirator who pleaded guilty prior to defendant's trial. During the period when the illegal activity allegedly occurred, Miller and Meatte acted as presidents of Citizens Bank and Commonwealth Industries, Inc., respectively. The indictment charges that the two men, along with other confederates, engaged in a prolonged conspiracy to defraud Citizens Bank.
 
 
 11
 Without revealing the fact, Meatte made the tape at issue while talking to defendant on the telephone. It consists of approximately one minute of a thirty minute conversation. Defendant filed a motion in limine to exclude it as untrustworthy and violative of 18 U.S.C. § 2511(2)(d). Intercepting communications "for the purpose of committing any criminal or tortious act" violates § 2511(2)(d), and evidence of such an interception is not admissible under 18 U.S.C. § 2515.
 
 
 12
 During the evidentiary hearing held to resolve the matter, Meatte testified that he made the recording not as blackmail but as "insurance" regarding the terms of certain promised loans to Commonwealth. He went on to explain that the details of the loans were complicated and that a primary reason for the recording was so that he could make sure that the loans were made out in the correct amounts.
 
 
 13
 This court has observed that "when the purpose of an interception is to make or preserve an accurate record of a conversation in order to prevent future distortions by a participant, the interception is legal." United States v. Underhill, 813 F.2d 105, 110 (6th Cir.), cert. denied, 482 U.S. 906 (1987). We review the district court's determination that a proffered tape was made for a legitimate purpose for clear error. Traficant v. Commissioner, 884 F.2d 258, 266 (6th Cir.1989). Furthermore, the burden rests with the party seeking to exclude the tape to prove that it was made for an impermissible purpose. Id. In this case, the testimony at the hearing supports a view that, while Meatte may have sought to protect his own interest, he did not do so with either criminal or tortious intent.[1]
 
 
 14
 We likewise reject defendant's contention that the district court abused its discretion in admitting the tape because it lacked the proper indicia of trustworthiness. See United States v. Scarborough, 43 F.3d 1021, 1024 (6th Cir.1994); United States v. West, 948 F.2d 1042, 1044 (6th Cir.1991) (declaring taped conversations admissible unless incomprehensible portions render them untrustworthy as a whole), cert. denied, 502 U.S. 1109 (1992). In this case, defendant's argument is not that the tape is inaccurate but that it does not contain the entire conversation. Meatte testified as to how and why he made the recording. Given that the tape represented an accurate, unedited recording of that brief portion of their conversation, we cannot conclude that the trial court abused its discretion in permitting its introduction.
 
 3. Jury Instruction
 
 15
 Defendant requested that the district court charge the jury with the entire language of 18 U.S.C. § 1005. The court declined because the statute includes four ways in which an individual can violate the statute. In this case, defendant was charged with making or causing false information to be recorded on the books and records of Citizens Bank, a violation that cannot be sanitized by the approval of the board of directors.
 
 
 16
 We affirm the reasoning of the district court on this issue.
 
 4. Allen Charge
 
 17
 It is beyond dispute that this case was closely contested. An earlier trial ended in a hung jury; and, after two days, the jury in the second trial sent a note to the court that it was deadlocked. In response, the district court chose to give an Allen charge.
 
 
 18
 Defendant does not quarrel with the substance of the charge and also concedes that the decision to give such an instruction rests within the sound discretion of the trial court. Rather, he argues that the timing resulted in coercion, coming as it did after ten days of trial and two days of deliberation.
 
 
 19
 While we have cautioned courts contemplating an Allen charge to take heed that the instruction not be coercive, see, e.g., In re Ford, 987 F.2d 334, 340 (6th Cir.), cert. denied, 506 U.S. 862 (1992), we have never held that the mere timing of an otherwise properly worded charge can render it per se coercive. In this case, the Allen charge tracked language explicitly approved by this court. See United States v. Clark, 988 F.2d 1459, 1468 (6th Cir.), cert. denied, 114 S.Ct. 105 (1993). Furthermore, we find defendant's related contention that the district court interjected itself into the trial in such a way as to aid the government utterly unsubstantiated by our review of the record.
 
 5. Supplemental Instructions
 
 20
 During the second day of deliberations, the jury sent a request to the court: "Please provide to the jurors a clearer explanation of the role 'intent' plays in our decision making process. Is intent to be the main point or the method by which he carried out the transactions being considered."
 
 
 21
 In response the trial judge reread the jury the elements of bank fraud, misapplication of bank funds, and false entry, as well as the standard Sixth Circuit instruction on state of mind. The court declined defense counsel's request to repeat the good faith portion of the instruction, noting that the jury had already been given the charge and could reread it.
 
 
 22
 This court reviews the manner in which the district court responds to jury questions for abuse of discretion. United States v. August, 984 F.2d 705, 712 (6th Cir.1992), cert. denied, 114 S.Ct. 158 (1993). We have observed that, "When a jury indicates confusion about an important legal issue, it is not sufficient for the court to rely on more general statements in its prior charge." United States v. Nunez, 889 F.2d 1564, 1568 (6th Cir.1989).
 
 
 23
 However, defendant does not argue that the court should have given the jury a more precise definition of intent. Rather, he simply believes that all of the earlier instructions, including the good faith instruction, should have been given. In our view, the instructions repeated by the district court properly responded to the question posed by the jury and did not emphasize the government's case to defendant's prejudice.
 
 6. Sentencing
 
 24
 Finally, we turn to defendant's sentence, which is based on statutes in effect prior to the enactment of the Sentencing Guidelines. The first issue raised by defendant involves a bargain proposed by the district court: if defendant paid $100,000 in restitution within ten days, his sentence would be reduced from fifteen to seven years of imprisonment. According to defendant, this proposal represented an illegal sentence because the only possible source from which the money could be obtained was his pension benefits.
 
 
 25
 Before addressing the technical aspects of this contention, we note that such bargains are generally ill-advised because they discriminate in favor of individuals with assets. While the district court has an understandable interest in helping the victims of crime to obtain restitution, in doing so it must not appear that one can simply buy one's way out of punishment that would befall a less affluent defendant. This kind of concern was one impetus behind adoption of the federal Sentencing Guidelines and we recognize that this type of scenario will not arise in prosecutions of crimes committed since their enactment.
 
 
 26
 Despite these policy reservations, the proposal offered by the district court does not, contrary to defendant's contentions, represent an illegal sentence. Although the court referred to defendant's individual retirement account in calculating his unencumbered assets, it did not specify that the restitution be paid from those funds and thus the sentence does not run afoul of either the anti-alienability provision of ERISA, 29 U.S.C. § 1056(d)(1), or Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365 (1990).
 
 
 27
 The second contention of error involves a release from Citizens Bank to defendant, his wife, and the trustee of his bankruptcy estate, renouncing all claims against them. Defendant raised the issue by way of a Fed.R.Crim.P. 35(c) motion to correct an illegal sentence, arguing that the court's order of restitution to Citizens Bank in the amount of $8,881,763.69 was illegal in light of the release.
 
 
 28
 While we agree with the parties that the district court had jurisdiction to entertain the motion, remand is not required because it is clear from the record that, even had the district court considered the release, it could still have imposed the order of restitution. Simply put, an order of restitution imposed in the wake of a criminal conviction does more than simply satisfy a monetary dispute between two parties: it also contains a punitive element designed to deter such conduct. See generally Kelly v. Robinson, 479 U.S. 36, 52-53 (1986). Furthermore, there is nothing in the record to indicate that defendant paid any money to Citizens Bank in exchange for the release and thus double recovery--in the unlikely event that the entire $8,881,763.69 is ever repaid--is not at issue.
 
 
 29
 For the foregoing reasons, the conviction and sentence are hereby affirmed.
 
 
 
 *
 The Honorable Lesley Brooks Wells, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 We note in passing that, had the tape been made in furtherance of the conspiracy to defraud, defendant would not, as a co-conspirator, be entitled to invoke the protection of 18 U.S.C. § 2511(2)(d). Underhill, 813 F.2d at 112; moreover, this circuit recognizes a "clean hands" exception to 18 U.S.C. § 2515. United States v. Murdock, 63 F.3d 1391, 1404 (6th Cir.1995), cert. denied, 116 S.Ct. 1672 (1996)