NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0004n.06

Case No. 11-2615

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jan 05, 2015
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| JACK PARKER, JR., | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE EASTERN** |
| SHERRY BURT, | ) | **DISTRICT OF MICHIGAN** |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| _____/ | ) | |

Before: KEITH, MOORE, and STRANCH, Circuit Judges

**DAMON J. KEITH, Circuit Judge.**

Petitioner-Appellant Jack Parker, Jr. was convicted in Michigan state court of murdering Sandra Brady. Parker appealed to the Michigan Court of Appeals, which upheld his conviction. Parker filed a petition for a writ of habeas corpus in federal court. The district court denied the petition but granted a certificate of appealability. For the following reasons, we **AFFIRM** the judgment of the district court.

I.  **BACKGROUND**

On late August 9, 2000 or early August 10, 2000, someone from an apartment complex in Royal Oak, Michigan reported an emergency. When the police arrived, they found Brady unconscious in Parker's apartment. Earlier, Parker had grabbed Brady, slammed her to the floor

- 1 -

or bed, and had anal sex with her. *See* R. at 1171;[1] Appellant's Br. at 10 n.3. Sometime after

Parker had sex with Brady, he noticed that she was unresponsive. Parker left the apartment and

asked his neighbors to call 911.

That night, the police arrested Parker for domestic assault. The State maintains that it

held Parker on a charge of parole violation for assaulting Brady. Although the State arrested

Parker for the assault in August 2000, it did not charge him by criminal complaint until October

28, 2002. *See* R. at 197–98.

On November 8, 2002, the trial court began a preliminary examination, but continued the

hearing until November 26, 2002. On that date, the prosecutor filed an amended complaint

against Parker that included counts for open murder,[2] voluntary manslaughter, and involuntary

manslaughter. R. at 197–98, 320. The preliminary examination was again continued until

January 16, 2003. R. 440. In agreeing to that continuance, Parker's then-counsel, Lawrence

Kaluzny, waived "any speedy trial argument . . . or 180 day violation." *Id.*

Parker filed a motion for new counsel on July 7, 2003. *See* R. at 157. The trial judge

granted the motion, appointing William Cataldo as Parker's new counsel on or around July 10,

2003. *See* R. at 157. The court held a pretrial hearing on September 26, 2003. At this hearing,

Cataldo stated that his hectic workload had prevented him from filing certain motions that Parker

wanted him to file. *See* R. at 477. Parker asserted at this hearing that the State was violating his

right to a speedy trial. R. at 479–80.

---

[1] "R." designates citations to the paginated record of the proceedings below. Thus, "R. at 1168" refers to PageID 1168, "R. at 1172" refers to PageID 1172, and so on.

[2] "[A] charge of open murder gives notice to the defendant that he must defend against first-degree murder and second-degree murder." *People v. Turner*, No. 229934, 2002 WL 31956937, at *2 (Mich. Ct. App. Dec. 20, 2002) (per curiam) (citing cases).

Evidently, the trial had been rescheduled for February 25, 2004. *See* R. at 490. On February 9, 2004, the trial court held a hearing on Parker's motion to replace Cataldo. *See* R. at 486. Cataldo stated that he was "admitting to ineffectiveness . . . up to [that] point." R. at 489. Cataldo attributed his ineffectiveness to a "breakdown in communication" based on his belief that certain motions Parker wanted him to file were not "valid." *See* R. at 489. Apparently, some of the motions sought to exclude evidence of Parker's prior assaults on two women and to have the court appoint an investigator to interview potentially favorable witnesses. Parker asserted his speedy trial rights at this hearing as well. R. at 486, 490–91.

The trial court held a motions hearing on August 10, 2004. Cataldo asked the court to allot funding for an investigator. The investigator was supposed to preliminarily interview potentially favorable witnesses whom the police had allegedly failed to interview. The trial court approved the request and earmarked $500 for this purpose. *See* R. at 500–01.

Sometime after this hearing and before September 1, 2004, Howard Arnkoff replaced Cataldo as Parker's counsel. Arnkoff met with Parker after his appointment but did not communicate with him for several months thereafter. *See* R. at 578–79. Later, as the trial approached, Arnkoff met with Parker twice. In the time between his appointment and the trial, Arnkoff read Parker's correspondence, visited the prosecutor's office, and reviewed boxes of evidence that Cataldo left for him. *See* R. at 578–80, 583.

Parker asserts that the trial court later held four pretrial hearings at which he was present but unrepresented by counsel. These dates are September 13, 2004; October 4, 2004; November 1, 2004; and November 8, 2004. R. at 2018. At the November 8 hearing, the State asked the court to postpone the November 30, 2004 trial date to "mid to late February." R. at 529. The trial

court approved the State's request. Parker stated at the November 8 hearing that he had mailed

three motions to the trial judge after the November 1 hearing. *See* R. at 532.

The trial eventually began on April 15, 2005. Parker sought a continuance. Purportedly,

Parker based this request on Arnkoff's failure to (1) pursue the motions Parker wanted him to file

and (2) obtain an investigator. Yet Arnkoff successfully argued certain motions on Parker's

behalf at the outset of the trial. For instance, Arnkoff prevailed on a motion in limine to exclude

evidence of Parker's prior assaults on two other women. R. at 574–75. Furthermore, Arnkoff

persuaded the prosecution not to present the testimony of two inmates to whom Parker allegedly

confessed that he had beaten Brady. *See* R. at 582. Ultimately, the trial judge refused to continue

the trial, finding that Parker had "everything the Prosecutor [had]." R. at 586.

At the trial, medical professionals testified regarding the extent of Brady's injuries and

the cause of death.  Andrew Korcek, the emergency room ("ER") physician who attended to

Brady, testified that she had swelling around her face, bruises on her chest and abdomen, nasal

fractures, and a fractured humerus. *See* R. at 2140, 2144, 2146–47, 2155.  Bernardino Pacris, the

State's medical examiner, testified that Brady had old and new bruises to the chest and

abdominal area; blunt force head trauma; bruising on the upper-right arm area; fractures to the

upper and lower ribs; and a fractured arm. R. at 2189–90, 2192, 2203. Pacris also testified that

Brady's injuries were consistent with an assault and that the head and chest trauma contributed to

her death. *See* R. at 2274–75, 2281.

Other witnesses testified that Parker assaulted Brady. Bonnie Flowers, Parker's neighbor,

testified that: (1) she heard Parker and Brady arguing on the night in question; (2) Parker was

ordering Brady to leave; (3) Parker dragged Brady back into the apartment by her neck; and

(4) Parker pushed Brady with such force that she fell down. *See* R. at 881–82, 885, 886–87.

Terry Johnson, Parker's fellow inmate, testified that Parker admitted to throwing Brady to the ground, picking her up and slamming her onto the bed, and having anal sex with her. R. at 1168–72. George Baker, Parker's former friend/employer, testified that Parker had (1) assaulted Brady on prior occasions and (2) stated that he wanted to kill her because he wanted her to leave his apartment. R. at 784, 787–89, 795.

The jury convicted Parker of second-degree murder. R. at 1468. The trial judge sentenced Parker as a fourth habitual offender to 50 to 100 years in prison. R. at 1500–01.

In June 2005, Parker appealed to the Michigan Court of Appeals. Parker argued that the State's delay in charging and trying him violated his right to a speedy trial. Parker also argued that he was denied counsel at critical stages of the proceedings and effective assistance of counsel. Regarding the ineffective-assistance claim, Parker argued that Arnkoff deficiently failed to (1) request an instruction for involuntary manslaughter based on gross negligence and (2) locate his former neighbors, the Nazarkoses. As to argument (2), Parker asserted that the Nazarkoses' testimony would have contradicted the testimony that he fought with Brady. Parker bases this assertion on the testimony of Richard Babecki, the lead investigator in the case. Babecki testified that the Nazarkoses did not report hearing a fight in Parker's apartment on the night in question. *See* R. at 2412, 2450.

On February 15, 2007, the Michigan Court of Appeals ("the Court") affirmed the trial court's judgment. *People v. Parker*, No. 263276, 2007 WL 486485 (Mich. Ct. App. Feb. 15, 2007) (per curiam). As to Parker's speedy trial claim, the Court held that Parker failed to show that the delay in charging and trying him was prejudicial even though there appeared to be no justification for the preindictment delay. *Id.* at *2. Further, the Court held that the hearings at which counsel did not represent Parker were not critical stages, reasoning that the trial court

addressed only minor procedural matters. *Id.* at *3. Additionally, the Court rejected Parker's claim that his counsel deficiently failed to investigate various matters. In so holding, the Court reasoned that Parker failed to sufficiently proffer that the matters he wanted his attorney to investigate would have "yielded favorable evidence." *Id.* at *4. The Court also concluded that the failure to locate the Nazarkoses was nonprejudicial. In reaching this conclusion, the Court noted that Babecki testified that the Nazarkoses reported that they did not hear a fight and concluded that this testimony was substantially similar to the Nazarkoses' anticipated testimony. *See id.* at *2.

In April 2009, pursuant to 28 U.S.C. § 2254, Parker filed an amended petition for writ of habeas corpus in the Eastern District of Michigan. Parker raised four claims in this petition: (1) the State violated his right to a speedy trial; (2) he was denied counsel at critical stages of the proceedings; (3) his counsel was ineffective for failing to investigate his case; and (4) his counsel was ineffective for failing to request a jury instruction on grossly negligent involuntary manslaughter.

On November 30, 2011, the district court denied Parker's amended petition, relying on reasoning substantially similar to that of the Michigan Court of Appeals. *See* R. at 2701–22. However, the district court granted a certificate of appealability with respect to claims (1) and (2). R. at 2272–73. Later, the certificate of appealability was expanded to include all of Parker's claims. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 2253.

## II.     STANDARD OF REVIEW

Parker's habeas corpus petition is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. *See generally* 28 U.S.C. § 2254 (2012); *see also Lindh v. Murphy*, 521 U.S. 320, 326 (1997) (holding that the AEDPA

generally applies only to cases that were filed after its enactment). In part, § 2254 provides as

follows:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the
> > State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (2012).

Under § 2254(d)(1)'s "contrary to" clause, courts may grant the writ if the state court:

(1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or

(2) decides a case differently than the Supreme Court has on materially indistinguishable facts.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under § 2254(d)(2)'s "unreasonable

application" clause, courts may grant the writ if the state court identifies the correct governing

legal principle from the Supreme Court's decisions but unreasonably applies that principle to the

facts of the case. *Id.* at 413.

An unreasonable application of federal law differs from an incorrect application of

federal law. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted). For § 2254(d)(1)

purposes, the application must be "objectively unreasonable." *Id.* (citation omitted) (internal

quotation marks omitted). "This distinction creates a substantially higher threshold for obtaining

relief than *de novo* review." *Id.* (citation omitted) (internal quotation marks omitted).

III.     ANALYSIS

A.     **Speedy Trial**

Parker asserts that the State violated his right to a speedy trial in two ways. First, he argues that the State's two-year delay in charging him violated his right to be free from excessive preindictment delay. Second, he argues that the approximately 2.5-year delay between charging him and trying him violated his right to be free from excessive postindictment delay. We analyze these questions separately. The Fifth Amendment's Due Process Clause protects against excessive preindictment delay. However, the Sixth Amendment's Speedy Trial Clause protects against excessive postindictment delay. *See, e.g.*, *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992).[3]

*1.     Preindictment Delay*

Parker argues that the State's two-year delay in charging him violated due process. Parker asserts that the delay was unnecessarily long and that the State had no justification for it. Further, Parker asserts that the delay prevented him from presenting favorable witnesses. Although Parker invokes the Supreme Court's decision in *United States v. Lovasco*, 431 U.S. 783 (1977), Parker also relies on *Monzo v. Edwards*, 281 F.3d 568 (6th Cir. 2002). In Parker's assessment, *Monzo* holds that delay in commencing prosecution is unjustifiable when, through negligence or error, the state ceases to investigate, and later, without new evidence, decides to prosecute. The

---

[3] Both of these rights apply to the states. Generally, the Fourteenth Amendment's Due Process Clause restricts the activities of the states, whereas the Fifth Amendment's Due Process Clause restricts the actions of the federal government. *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (citations omitted). Thus, technically, the Fourteenth Amendment's Due Process Clause applies to Parker's claim for excessive preindictment delay. However, the Fifth Amendment's Due Process Clause is "analogous" to the Fourteenth Amendment's Due Process Clause. Therefore, cases interpreting the Fifth Amendment's Due Process Clause in the context of claims for excessive preindictment delay are equally applicable here. As to the claim for excessive postindictment delay, the Sixth Amendment's Speedy Trial Clause applies in state criminal proceedings via the Fourteenth Amendment's Due Process Clause. *See Redd v. Sowders*, 809 F.2d 1266, 1268 (6th Cir. 1987) (citations omitted).

State responds that (1) Parker caused much of the delay; (2) the delay failed to prejudice him; and (3) Parker's citation to *Monzo* is inapposite.

In certain cases, the Due Process Clause protects against preindictment delay. The Due Process Clause "requires the dismissal of an indictment . . . if the defendant can prove that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense." *United States v. Gouveia*, 467 U.S. 180, 192 (1984) (citing *United State v. Lovasco*, 431 U.S. 783, 789 (1977); *United States v. Marion*, 404 U.S. 307, 324 (1971)). In accordance with the Supreme Court's rule, we have consistently held that "[d]ismissal for pre-indictment delay is warranted only when the defendant shows [1] substantial prejudice to his right to a fair trial *and* [2] that the delay was an intentional device by the government to gain a tactical advantage." *Brown*, 959 F.2d at 66 (alteration in original) (citations omitted) (internal quotation marks omitted).

In this case, the Michigan Court of Appeals reasonably concluded that Parker failed to show that the State's delay in charging him was an intentional device to gain a tactical advantage. Although there appears to be no justification for the delay, Parker has presented inadequate evidence of improper intent. Parker argues that one can infer improper intent because the State allegedly had all of the evidence it needed to prosecute him within the first few weeks of his arrest yet waited to charge him. While this alleged fact may support an inference of negligence or recklessness, these mental states are insufficient to show improper intent.[4] All the same, Parker cites our decision in *Monzo* for the proposition that preindictment delay is

---

[4] *See United States v. Banks*, 27 F. App'x 354, 357 (6th Cir. 2001) (citation omitted) ("[W]here delay is due to simple negligence and not a concerted effort by the government to gain an advantage, no due process violation exists."); *United States v. Jackson*, 22 F. App'x 396, 398–99 (6th Cir. 2001) (citation omitted) (stating that "the delay must be purposeful and that allegations of reckless or negligent delay are insufficient"); *United States v. Rogers*, 118 F.3d 466, 476 (1997); *United States v. Miller*, No. 95-5298, 1996 WL 426135, at *2 (6th Cir. July 29, 1996) (suggesting that "negligence" is insufficient to show "that the government engaged in use of the pre-indictment delay for tactical reasons . . . .").

unjustifiable where the state negligently stops investigating a case and later decides to prosecute without new evidence. But the *Monzo* court did not so hold. When the *Monzo* court wrote that preindictment delay is unjustifiable if the state negligently stops investigating a case and later decides to prosecute without new evidence, it was merely mentioning a rule that the Ohio Supreme Court enunciated in *State v. Luck*, 472 N.E.2d 1097 (Ohio 1984). *See Monzo*, 281 F.3d at 581. Furthermore, even had the *Monzo* court so held, the holding would be inconsistent with the long line of federal authority cited above. Therefore, the conclusion of the Michigan Court of Appeals that Parker failed to show that the State's delay in charging him was an intentional device to gain a tactical advantage was reasonable.

It was also reasonable for the Michigan Court of Appeals to conclude that the delay was not substantially prejudicial. Preindictment delay of two years, while not insignificant, is generally insufficient to presume substantial prejudice.[5] Parker contends that the delay enabled the Nazarkoses to disappear, thereby substantially prejudicing him. However, Babecki's testimony was similar to the testimony that Parker assumes that the Nazarkoses would have given. To some extent, this similarity counteracts the prejudice that the Nazarkoses' absence allegedly caused. Parker responds that the Nazarkoses' testimony would have benefited him more than Babecki's. This assertion is speculative. Parker has not shown that the Nazarkoses "would have testified, that [their] testimony would have withstood cross-examination, and that the jury would have found [them] . . . credible witness[es]." *United States v. Rogers*, 118 F.3d

---

[5] *See United States v. King*, 22 F. App'x 567, 568 (6th Cir. 2001) (citing cases) (stating that a 26-month delay "was not presumptively prejudicial"); *United States v. Cooper*, No. 99-3356, 2000 WL 1562791, at *2 (6th Cir. Oct. 10, 2000) (per curiam) (citing cases) (holding that a 25-month delay was not presumptively prejudicial and noting that the Sixth Circuit has upheld longer pre-indictment delays); *United States v. Cook*, No. 98-5457, 1999 WL 357788, at *3 (6th Cir. May 20, 1999) (citations omitted) (holding that a 22-month delay was not presumptively prejudicial and noting that this delay "was substantially shorter than the delay in several cases in which this court has found no due process violation").

466, 475 (6th Cir. 1997) (citation omitted). Thus, it is unclear that the Nazarkoses' testimony "would have affected the outcome of the trial." *Id.* at 476. Therefore, the Michigan Court of Appeals reasonably concluded that the preindictment delay did not substantially prejudice Parker. Accordingly, Parker's Fifth and Fourteenth Amendment challenge lacks merit.

2.      *Postindictment Delay*

Parker argues that the approximately 2.5-year delay between his charge and trial violated his speedy trial rights under the Sixth Amendment. The State responds that (1) Parker's attorney waived his right to a speedy trial and (2) Parker cannot show prejudice from the delay. The Michigan Court of Appeals relied entirely on its conclusion that Parker's attorney waived all speedy trial rights at Parker's preliminary examination.

Courts employ a balancing test to determine whether postindictment delay violates the Sixth Amendment. The Supreme Court has identified four nonexhaustive factors for courts to consider when making this determination: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "The length of the delay is to some extent a triggering mechanism." *Id.* at 531. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* Postindictment delay of one year or more is presumptively prejudicial. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (internal quotation marks omitted). However, "none of the four factors identified above [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 U.S. at 533. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* As the 2.5-year delay at issue is presumptively prejudicial, we proceed to analyze factors two through four.

Here, under factor two, each side bears some responsibility for a significant share of the postindictment delay. Kaluzny waived Parker's right to a speedy trial with regard to continuation of the preliminary examination. This waiver constitutes a reasonable justification for only some of the postindictment delay. *See Barker*, 407 U.S. at 519 (stating that "there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused"); *cf. United States v. White*, 985 F.2d 271, 275 n.1 (6th Cir. 1993) (citation omitted) (stating that the defendant could not prevail on a Speedy Trial Act argument because "his attorney consented to the delays"). Also, the record reflects that each side sought adjournments, and court congestion caused part of the delay. Parker attributes some delay to his attorneys' alleged ineffectiveness for failing to file his motions and seek the appointment of an investigator, stressing that Cataldo stated that he was ineffective. But some of these motions lacked merit and Arnkoff successfully argued similar matters at the outset of trial. Therefore, while the prosecution might have caused some of the delay, Parker also caused some of it. Therefore, factor two does not strongly favor either party.

By contrast, the third *Barker* factor favors Parker. The State does not dispute that Parker asserted his speedy trial rights in July 2003 and Parker states that he asserted them as early as May 2003. *See* R. at 157, 490–91. Parker also asserted his rights on four later occasions. *Supra* p. 3. We have held that the third *Barker* factor favors the defendant based on fewer assertions than the five or six at issue. *See, e.g.*, *White*, 985 F.2d at 276. Therefore, while some of these assertions could be calculating, the third factor tips in Parker's favor.

The fourth factor, prejudice, favors the State. Parker has not disputed the district court's finding that he was imprisoned on a parole violation during the 2.5-year postindictment period. Therefore, it is arguable that the delay did not involve "oppressive pretrial incarceration" as

much as it would have had Parker been incarcerated for only the charged offense. *Cf. Barker*, 407 U.S. at 532. Likewise, Parker's preexisting incarceration reasonably could have mitigated some of the "anxiety and concern" he might have felt while awaiting trial. *Cf. id.* Although Parker counters that the delay enabled the Nazarkoses to disappear, his belief that they would have provided helpful testimony is speculative. Thus, the prejudice factor favors the State.

In sum, the balance of the *Barker* factors swings in the State's favor. Although the postindictment delay was not insignificant, Parker caused some of it. Furthermore, the postindictment delay did not meaningfully prejudice Parker's defense. Therefore, we conclude that habeas relief is unavailable on the claim that the postindictment delay violated the Sixth Amendment.

**B.     Ineffective Assistance of Counsel—Critical Stages of Proceedings**

Parker argues that he was denied counsel at critical stages of the proceedings in violation of the Sixth Amendment. Parker notes that the trial court held four pretrial hearings at which he was present but unrepresented by counsel. Parker argues that, in at least one of these hearings, there was a reasonable probability that he could suffer significant consequences from his denial of counsel. The State generally responds that the hearings were not critical stages of the proceedings.

The complete absence of counsel at a critical stage of a criminal proceeding is a *per se* Sixth Amendment violation. *Van v. Jones*, 475 F.3d 292, 312 (6th Cir. 2007) (citing Supreme Court cases). For a stage to be critical, there must be "a reasonable probability that [the defendant's] case could suffer significant consequences from his total denial of counsel at the stage." *Id.* at 313. In making this determination, courts may consider whether the defendant had an opportunity to recover or exercise whatever privilege he lost at the hearing in which counsel

failed to represent him. *Id.* It follows that critical stages do not include proceedings where there is no likelihood of prejudice from the attorney's absence. *See id.* (citation omitted).

In this case, the conclusion of the Michigan Court of Appeals that Parker was not denied counsel at critical stages of the proceedings was not unreasonable. The Michigan Court of Appeals held that "none of the four hearings at which counsel was absent involved a critical stage," *Parker*, 2007 WL 486485, at *3, relying on the Supreme Court's language in *Bell v. Cone*, 535 U.S. 685, 696 (2002), stating that a critical stage involves "a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused." In light of Supreme Court precedent including and following *United States v. Cronic*, 466 U.S. 648 (1984), we cannot hold that the state court's conclusion was unreasonable.

## C. Ineffective Assistance of Counsel—Failure to Investigate

Parker argues that his attorneys were ineffective because they failed to investigate Brady's cause of death and interview potential witnesses. Specifically, Parker faults his attorneys' failure to (1) review Brady's medical records; (2) seek the appointment of an independent medical examiner; and (3) interview potential witnesses at Parker's apartment complex. Parker suggests that taking these steps likely would have: (1) uncovered evidence rebutting the prosecution's portrait of him as an abuser; (2) undercut testimony that he fought with Brady on the night in question; and (3) shown that Brady's death was caused by her alcoholism and other factors. The State responds that Parker's attorneys' performance was objectively reasonable and that, to the extent their performance was deficient, Parker cannot show prejudice.

We must review Parker's claim for ineffective assistance of counsel under the two-prong standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a claim of

ineffective assistance of counsel, Parker must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Id.* at 687. To prove deficiency, Parker must show that his counsel's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Id.* at 688. Under the prejudice prong, Parker "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* standard contemplates courts' indulgence in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See id.* at 689; *see also Premo v. Moore*, 131 S. Ct. 733, 739–40 (2011) (citations omitted) (internal quotation marks omitted) ("Surmounting *Strickland*'s high bar is never an easy task . . . . The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.").

It is "all the more difficult" to prevail on a *Strickland* claim under § 2254(d). *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011). As the standards that *Strickland* and § 2254(d) create are both "'highly deferential,'" review is "'doubly'" so when the two apply in tandem. *Id.* (quoting *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)). Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Id.* Rather, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Michigan Court of Appeals rejected Parker's claim because Parker "never provided any offer of proof to factually support his claim that an investigation [by counsel] would have yielded favorable evidence." *Parker*, 2007 WL 486485, at *4. We cannot say that this conclusion was an unreasonable application of Supreme Court precedent.

### D.      Ineffective Assistance of Counsel—Failure to Request Jury Instruction

Parker argues that Arnkoff was ineffective because he failed to request a jury instruction for involuntary manslaughter based on gross negligence. The trial judge instructed the jury on the intent-to-injure form of involuntary manslaughter. However, Arnkoff did not ask the judge to instruct the jury that it could convict Parker of involuntary manslaughter based on gross negligence if it found that he caused Brady's death due to a willful failure to exercise ordinary care to avoid injuring her. Parker argues that Arnkoff should have requested this instruction because "[t]here was evidence that the position of Ms. Brady's neck while she and Mr. Parker were having sex and her intoxication level could have explained her asphyxiation and demonstrated that Ms. Brady's death was an accident." Appellant's Br. at 54. However, Parker does not specify the source of federal law that Arnkoff's failure allegedly violates. According to the State, a rational view of the evidence would not have permitted such an instruction because of overwhelming evidence that Brady died due to an assault by Parker. At oral argument, the State alternatively argued that, in noncapital cases, due process does not require courts to instruct the jury on a lesser-included offense rationally supported by the evidence.

The right to an instruction on a lesser-included offense in a noncapital case is not clearly established federal law. As we recently recognized, "[t]he Supreme Court . . . has never held that the Due Process Clause requires instructing the jury on a lesser included offense in a non-capital case." *McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014); *see also Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) ("[T]he Constitution does not require a lesser-included offense instruction in non-capital cases." (citing *Bagby v. Sowders*, 894 F.2d 792, 795–97 (6th Cir. 1990) (en banc))). Here, Parker was not charged with a capital offense. *See* R. at 197–98. Thus, the Michigan courts did not apply federal law unreasonably.

**IV.     CONCLUSION**

For the foregoing reasons, we **AFFIRM** the district court's judgment.